Pauline ROBERTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 52032.

Court of Criminal Appeals of Texas.

June 9, 1976.

Bob Kuhn, Austin, for appellant.

Robert O. Smith, Dist. Atty., and Stephen H. Capelle, Asst. Dist. Atty., Austin, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This is an appeal from an order revoking probation.

On July 6, 1972, appellant was convicted of theft. Punishment was assessed at ten

years. Imposition of sentence was suspended and probation granted. Among the conditions of probation was the requirement that she avoid injurious or vicious habits, including the use of narcotic or habit-forming drugs and alcoholic beverages.

Subsequently the State filed a motion to revoke appellant's probation, alleging that "she violated the provisions of her probation in that the urine specimen [1] the defendant submitted on August 6, 1974, was found to contain morphine." [2]

The trial court, after hearing evidence on the motion to revoke, found that the allegation was true, revoked appellant's probation, and reduced the punishment to two years. Appellant contends that the evidence presented at the hearing was insufficient to support the trial court's findings and order.

It was proved at the hearing and the State stipulated that on August 6, 1974, appellant possessed a valid prescription for a drug containing codeine that had been given to her by an Austin dentist during treatment of a dental problem.

The State contends that the evidence showed that appellant's urine contained morphine, not codeine. The State relies wholly upon the testimony of Ed Gleason, laboratory supervisor of the Adult Probation Department, Travis County.

Gleason testified that he had performed spectrophotometer analysis upon appellant's urine, using an emit spectrophotometer machine. He was properly qualified as an expert in the theory and use of this machine. He interpreted the results of the test he performed upon appellant's urine as showing the urine contained "morphine or an opiate derivative." He agreed, however, that solely upon the basis of this test it was "impossible" to determine whether the urine contained morphine or codeine.

Gleason then traveled to the Texas Medical Center in Houston, where there was a morphine analyzer operating on a spectroflorometer. This machine, unlike the emit spectrophotometer, was capable of determining whether urine contained morphine or codeine.

Some unnamed person tested appellant's urine upon this machine while Gleason was present. Appellant's objection to the introduction of the hearsay results of the test was overruled. Appellant asked to take the witness on voir dire examination and adduced the following:

"Q. [by defense counsel]: Mr. Gleason, have you operated this machinery that you are talking about now?

"A. [by Gleason]: The morphine analyzer?

"Q. Yes.

"A. No, I haven't.

"Q. You have never operated one?

"A. No, sir."

After testifying that the test showed there was morphine in the urine sample, Gleason testified as follows upon cross-examination:

"Q. [by defense counsel]: What does —well, tell me on how many occasions that you have observed this test being run—the same type of test that was used?

"A. [by Gleason]: This same—particular specimen?

"Q. No, with this particular kind of machine.

"A. On four other occasions.

"Q. And where did you receive your training concerning the use and operation of this machine?

"A. I didn't receive any training on that machine.

"Q. You've never received any training on the use and operation of this machine?

"A. On the morphine analyzer, no, sir.

1. A term of appellant's probation required her to submit urine specimens.

2. Technically, the motion to revoke did not allege a violation of the referred to condition of probation. The terms of probation prohibited the use of narcotic drugs, not the presence of metabolic products of such drugs in the urine.

"Q. Did you rely on what the other person who was operating the machine told you concerning the analysis of this urine specimen?

"A. The explanation—I actually did visualize the reading on the screen, the print outs.

"Q. But the reading itself would not tell you anything unless you knew how the machine functioned or how it worked.

"A. Yes, sir.

"Q. Is that correct?

"A. Yes, sir."

■ Thus, Gleason was not qualified as an expert in the theory or use of this type of machine. He relied upon the statements of the anonymous operator of the machine, who may or may not have been such an expert, and a chart to interpret the result of the test performed using the machine. Both were hearsay. *Hill v. State*, 158 Tex. Cr.R. 313, 256 S.W.2d 93.

■ It is not the mere fact that Gleason did not personally operate the machine that rendered his testimony inadmissible. Rather, his lack of expertise with respect to the machine and his reliance upon the assumed expertise of others deprived appellant of any meaningful cross-examination upon the accuracy of the machine.

■ In *Kent v. State*, 374 S.W.2d 671 (Tex.Cr.App.), a properly qualified expert testified that other qualified experts under his supervision had performed the relevant tests. This Court held:

"A chemist under whose supervision laboratory analysis of certain specimens are made, by another chemist in said laboratory, may testify from records of the laboratory as to the results thereof."

Accord, *Alvarez v. State*, 508 S.W.2d 100 (Tex.Cr.App.); *Norris v. State*, 507 S.W.2d 796 (Tex.Cr.App.); *Boatright v. State*, 472 S.W.2d 765 (Tex.Cr.App.). In addition, the custodian of the business records of a laboratory may testify as to test results under circumstances in compliance with Art. 3737e, V.A.C.S., and *Coulter v. State*, 494 S.W.2d 876 (Tex.Cr.App.). *Norris v. State,* supra.

In the instant case, Gleason was not an expert upon this type of machine, the person who operated the machine was not shown to be an expert, the latter was not under the supervision of the former, and no records from the laboratory where the test was performed were either introduced into evidence or even seen by the witness. The objection to this portion of Gleason's testimony should have been sustained and the Houston test results should not have been admitted into evidence.

We will presume that the trial court disregarded this evidence, and will next determine whether the remainder of the evidence was sufficient to support the revocation of appellant's probation. *Kubat v. State*, 503 S.W.2d 258 (Tex.Cr.App.); *Johnson v. State*, 498 S.W.2d 198 (Tex.Cr.App.); *Smith v. State*, 494 S.W.2d 873 (Tex.Cr. App.).

■■ The only other evidence was the result of Gleason's emit spectrophotometer analysis, which was properly admitted. Such result was that appellant's urine contained either morphine or codeine, and it was impossible to determine which, and as stated above, appellant was at the time under the prescribed use of a drug containing codeine. The evidence was insufficient to support the revocation order. The entering of same was therefore an abuse of discretion.

The order revoking probation is set aside and the cause is remanded.