James Ronald HODGE, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 61358–61362.

Court of Criminal Appeals of Texas, Panel No. 2.

April 28, 1982.

Kerry P. Fitzgerald, Dallas, for appellant.

Henry Wade, Dist. Atty., Maridell J. Templeton and Sue L. Lagarde, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and W. C. DAVIS and TEAGUE, JJ.

## OPINION

ONION, Presiding Judge.

These are appeals from five convictions for the delivery of heroin, where the punishment was assessed by the jury at eleven (11) years' confinement in each case following a guilty verdict.

Appellant contends in his first three grounds of error that the prosecutor committed reversible error in her argument during the penalty stage of the trial "by inviting the jury to apply the parole law in assessing punishment."

The pertinent portion of the argument follows:

"MS. LA GARDE [Prosecutor]: . . . Ladies and Gentlemen, today you are the they that is being referred to and you have the chance now to do something about the dope pushers in Dallas County, at least insofar as this Defendant in the five cases that you found him guilty of. *You have the chance to assess a substantial number of years and at least keep him off the streets for whatever period of time to serve the sentence that you decide is appropriate in this case.*

"MR. TETER [Defense Counsel]: We object to the statement of counsel, it violates—we object to the last statement of counsel insofar as it is a direct violation of the directions of the Court. Judge, I don't want to repeat it, it will only make it that much worse.

"MS. LA GARDE: Your Honor, I have no way of knowing what sentence they will assess.

"MR. TETER: Your Honor, if you want to rule on it, we would ask the Jury to be excused while the Court Reporter reads to you the—

"MS. LA GARDE: Judge, in the interest of time I will withdraw the portion of my argument.

"MR. TETER: I will ask for a mistrial.

"THE COURT: The Court will sustain the objection and overrule the motion for the mistrial. Go ahead.

"MS. LA GARDE: I have no way of knowing what the sentence you people will deem appropriate in this case so therefore, *I have no way of knowing how long he will serve because I don't know what you are going to assess.*

"MR. TETER: We object to the same thing, it is purely a reference to what you instructed the Jury not to consider.

"THE COURT: Ladies and Gentlemen, I will instruct you that it is no concern of yours how long a person will serve any sentence you decide to impose, that is in the Court's charge.

"MR. TETER: We will have to move for a mistrial.

"THE COURT: The Court will overrule." (Emphasis supplied.)

█ It is well established in this state that an argument designed to circumvent the trial court's jury instruction not to discuss the matter of parole in assessing punishment is improper and it serves no useful or legitimate purpose. *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App.1980); *Woerner v. State,* 576 S.W.2d 85 (Tex.Cr.App.1979); *Carrillo v. State,* 566 S.W.2d 902 (Tex.Cr. App.1978); *Jones v. State,* 564 S.W.2d 718 (Tex.Cr.App.1978); *Kincaid v. State,* 534 S.W.2d 340 (Tex.Cr.App.1976); *Marshburn v. State,* 522 S.W.2d 900 (Tex.Cr.App.1975); *Dorsey v. State,* 450 S.W.2d 332 (Tex.Cr. App.1969); *Hernandez v. State,* 366 S.W.2d 575 (Tex.Cr.App.1963). However, we do not find that the prosecutor's remarks constituted reversible error.

█ Here the appellant had been convicted of five cases of delivery of heroin. The State had a right to argue that the jury assess a substantial number of years in punishment to keep him "off the streets." There was no mention of the parole laws or that the appellant would gain an early release. We disagree that the argument was an allusion to the parole law. See and cf. *Givens v. State,* 554 S.W.2d 199 (Tex.Cr. App.1977).

Even if it could be argued that the prosecutor was on verge of making improper remarks before being interrupted by objections, we will not speculate as to what her remarks might have been. *Carrillo v. State,* supra. Further, even if it could be argued that the statements were a subtle reference to the parole law, we note that the court sustained the first objection and in response to the second objection instructed the jurors that it was no concern of theirs how long a person will serve a sentence that is imposed, and that such instruction was in the court's charge. Any possible error was cured by the court's prompt action. The court did not err in overruling the mistrial motions. Appellant's contention is overruled.

Next, appellant contends that the trial court erred in denying his motion for a mistrial when a police officer indicated that appellant was a known narcotic dealer.

The testimony follows:

"MS. LA GARDE: I would like for you to describe briefly to the Jury how that particular undercover operation worked?

"WITNESS: Basically the Drug Abuse Section of the Dallas Police Department acquires the services of another officer from outside of our division, in this case it would be a black officer from the Central Patrol Division, that officer would be placed on the street in an undercover capacity to seek out and make heroin buys from known heroin pushers within the Dallas City Limits.

"MR. TETER: Your Honor, we object to him implying that this Defendant is a known heroin pusher, it is totally unresponsive and it is deliberate on his part and it prejudices this man's right to have a fair trial.

"THE COURT: Well, I will sustain the objection.

"MR. TETER: We would ask the jury to be instructed to disregard it.

"THE COURT: Ladies and Gentlemen, disregard the answer of this witness to the last question.

"MR. TETER: We would ask that the witness be instructed to conform with the rules of evidence which he is well experienced and not offer any more unresponsive statements of that nature.

"THE COURT: Just try to answer the question.

"MR. TETER: We would ask for a mistrial.

"THE COURT: The Court will overrule."

■ The answer referred to general procedures in the police department regarding undercover work. It was responsive to the question asked. It did not necessarily, standing alone, at the time the question was asked, refer to the appellant as a known heroin pusher. The objection was sustained and the jury was instructed to disregard. The instruction was sufficient to cure the error, if any. *Ridyolph v. State*, 545 S.W.2d 784 (Tex.Cr.App.1977); *Dugger v. State*, 543 S.W.2d 374 (Tex.Cr.App.1976); *Hernandez v. State*, 530 S.W.2d 563 (Tex.Cr.App. 1975).

In appellant's next five grounds of error, he contends that the court erred in admitting the testimony of E. H. Foerester that State's Exhibits Nos. 1A, 2A, 3A, 4A and 5A contained heroin because the State failed to lay the proper predicate pursuant to the Business Records Act, Article 3737e, V.A.C.S., and because the introduction of Foerester's testimony violated the best evidence rule.

State's Exhibits Nos. 1A, 2A, 3A, 4A and 5A were plastic packages each containing a powdery substance. Foerester, an assistant toxicologist with the Dallas County Criminal Investigation Laboratory, testified from the records of the laboratory as to the results of the analysis of the State's Exhibits. The results showed that the substance in each package was heroin.

■ This court has consistently held that the Business Records Act, Article 3737e,

supra, is applicable to criminal cases. *Kemner v. State*, 589 S.W.2d 403 (Tex.Cr.App. 1979); *Simmons v. State*, 564 S.W.2d 769 (Tex.Cr.App.1978); *Williams v. State*, 549 S.W.2d 183 (Tex.Cr.App.1977). Where the proper predicate has been laid, this exception to the hearsay rule is to be liberally construed. *Kemner*, supra; *Simmons*, supra; *Williams*, supra. Specifically, appellant complains that Article 3737e, § 1(a) and (b), supra, were not complied with prior to Foerester testifying as to the results of the analysis.

■ Appellant's objection at the trial court was a general objection that the proper predicate had not been laid pursuant to the Business Records Act. Appellant did not indicate in his objection that § 1(a) and (b) of Article 3737e had not been established. Ordinarily error such as this may be cured or corrected if the issue is promptly and specifically brought to the attention of the trial judge. *Williams*, supra. Since the objection made in the trial court was not the same as urged on appeal, appellant has not properly preserved his argument for review. *Williams*, supra.

Appellant also complains that the laboratory reports were the best evidence and as such should have been introduced.

■ Foerester testified from the reports. Appellant's counsel cross-examined Foerester from the reports. If the accuracy of the records were in doubt, then counsel could have raised the question. *Alvarez v. State*, 508 S.W.2d 100 (Tex.Cr.App.1974); *Cozby v. State*, 506 S.W.2d 589 (Tex.Cr.App.1974). Appellant's contention is overruled.[1]

■ In appellant's next five grounds of error he contends that the State failed to prove that the substance sold by appellant was heroin. Specifically, appellant argues that there was no expert testimony to prove that the powdery substance sold to the undercover officer was heroin. Appellant's contention is totally without merit. The

---

1. In *Kent v. State*, 374 S.W.2d 671 (Tex.Cr.App. 1963), this court held that a chemist under whose supervision laboratory analysis of certain specimens are made, by another chemist in

said laboratory, may testify from records of the laboratory as to the results thereof. *Roberts v. State*, 537 S.W.2d 461 (Tex.Cr.App.1976).

State, through its witness, E. H. Foerester, clearly established that the powdery substance in State's Exhibits Nos. 1A–5A was heroin.

Appellant also claims the trial court committed reversible error in preventing him from cross-examining Officer Mack, the undercover agent, as to his financial condition at the time cases were filed against the appellant and others in order to demonstrate bias and motive.

Appellant first attempted to get the court to permit him to show Officer Mack's financial condition, his divorce, the details of his divorce, child support payments, etc. The court refused to permit such testimony. Later in perfecting his bill of exception appellant simply elicited from Mack that his annual salary was $14,000.00; that as an undercover agent he made 55 cases against some 27 individuals; that when he was called to testify he received time and a half pay or compensation time from the police department.

■ Great latitude should be allowed the accused to show a witness' bias or motive to falsify his testimony. *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979); *Bates v. State*, 587 S.W.2d 121 (Tex.Cr.App.1979); *Chvojka v. State*, 582 S.W.2d 828 (Tex.Cr.App.1979); *Cloud v. State*, 567 S.W.2d 801 (Tex.Cr.App.1978); *Blair v. State*, 511 S.W.2d 277 (Tex.Cr.App.1974); *Seal v. State*, 496 S.W.2d 621 (Tex.Cr.App.1973); *Hooper v. State*, 494 S.W.2d 846 (Tex.Cr.App.1973); *Burkhalter v. State*, 493 S.W.2d 214 (Tex.Cr.App.1973); *Kohler v. State*, 490 S.W.2d 592 (Tex.Cr.App.1973); *Wood v. State*, 486 S.W.2d 359 (Tex.Cr.App.1972). However, trial courts have considerable discretion as to how and when bias may be proved and as to what collateral evidence is material for that purpose. *Carrillo*, supra; *Bates*, supra; *Chvojka*, supra; *Cloud*, supra. Ray, Texas Law of Evidence, § 679 (1980).

■ The extent to which a witness may be cross-examined for the purpose of showing bias on a collateral matter rests on the sound discretion of the trial judge. *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218,

75 L.Ed. 624 (1931); *Carrillo*, supra; *Cloud*, supra. The trial judge must balance the probative value of the evidence sought to be introduced against the risk its admission may entail. The potential risks include the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time. *Carrillo*, supra; *Chvojka*, supra; *Cloud*, supra.

■ While the trial court could have easily allowed the appellant to show what was developed on the bill of exception, we can find no abuse of discretion in refusing to do so under the circumstances.

Next, appellant alleges that the trial judge erred in denying his motion for a mistrial because of the prosecutor's jury argument during the guilt-innocence phase of the trial attacking defense counsel.

The pertinent portion of the record follows:

"MS. LA GARDE: ... It happened just like Officer Mack told you it did, he went out there and made a buy, made two buys, made three buys, made four buys and five buys. The five cases that we have here. So think about that. Mr. Teter used the word and I think it was a very carefully chosen word in his argument to you, that he was making a record of this, Officer Mack. Now, I think he meant to imply to you that there was a recording. Well, there is no testimony before you that there was a recording made. What Officer Mack told you he made and what Mr. Teter, if he had been leveling with you would have told you what happened was that he made notes—

"MR. TETER: Well, I object to the reference by the State that the defense attorney is not trying to level with the Jury, that implies I'm trying to make some false statements to this Jury and this prosecution is not allowed to make accusations like that especially when it is not supported by evidence.

"THE COURT: Ladies and Gentlemen, you heard the evidence in this case and you are to make your decision on what

you have heard from the witness stand and not what either counsel will tell you.

"MR. TETER: We would ask that the Jury be instructed to disregard the argument of counsel that the defense counsel is not trying to level with them, that I was trying to deceive them in any way.

"THE COURT: The Court will overrule."

The record reflects that appellant's counsel cross-examined Officer Mack at length concerning the body recording device that Officer Mack wore during the heroin buys and whether recordings were made of the buys. Additionally, during closing argument appellant's counsel again discussed the fact that no recordings were made during the buys between Officer Mack and appellant. The prosecutor implied in her closing argument that appellant's counsel was not being honest in his approach to the facts regarding the issue of the lack of recordings of any conversations.

■ Ordinarily, any injury from an improper jury argument by a prosecutor is obviated when an objection thereto is sustained and the jury is instructed to disregard the argument. *Thomas v. State*, 578 S.W.2d 691 (Tex.Cr.App.1979); *Carraway v. State*, 507 S.W.2d 761 (Tex.Cr.App.1974). Unless the remarks are so inflammatory that their prejudicial effect cannot reasonably be removed by such an admonition, a reversal of the conviction is required. *Thomas*, supra; *Carraway*, supra.

■ The appellant failed to obtain a ruling on his objection although the court did instruct the jury to base their decision on the evidence heard from the witness and not on either of counsel's remarks. The court overruled the request for further jury instruction.

The prosecutor could make reasonable deductions from the evidence and may reply to his adversary's argument. Under the circumstances and in light of the court's jury instruction, we find no reversible error.

Lastly, appellant contends the "trial court committed reversible error in excluding from evidence testimony concerning the amount of the U. S. Treasury Check, the subject of a three count forgery indictment as same was material and relevant to demonstrate the severity of the offense."

At the penalty stage of the trial the appellant stipulated to a prior conviction in federal court for forging and uttering a U. S. Treasury check. He then took the witness stand and his counsel inquired about the said conviction and asked the appellant to tell the jury "what actually happened." The State's objection was sustained as to exploring the details of the prior conviction. An informal bill of exception was perfected in which appellant testified how he came into possession of said check, that the amount was "a hundred and eighty something," how he "signed" it and gave it to another fellow to cash, his arrest, etc. At no time did the appellant ask the trial court to allow him an opportunity to introduce evidence as to the amount of the check alone as he now claims on appeal. He insisted he was entitled to give all the details of his prior conviction.

In *Mullins v. State*, 492 S.W.2d 277 (Tex. Cr.App.1973), this court stated:

"Article 37.07, supra, limits the 'prior criminal record' to *final convictions*. The fact of the prior conviction and the identity of the accused as the person so convicted are the necessary elements. The statute does not permit the State to show the details of the offenses resulting in such convictions . . . ."

■ A good rule works both ways. While it was the State who sought to introduce details of the prior conviction in *Mullins*, we hold that under Article 37.07, supra, neither the State nor the defendant may introduce into evidence all the details of the prior conviction. If it was otherwise, the penalty phase of a bifurcated trial could easily turn into a re-trial of all prior convictions of a defendant.

Appellant's contention is overruled.

The judgment is affirmed.