IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-083-CR





DAVID ALAN LINVILLE,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT



NO. 40,794, HONORABLE JACK W. PRESCOTT, JUDGE PRESIDING



 




 Appellant was tried under an indictment charging him with the offense of attempted
murder. See Tex. Penal Code Ann. § 15.01 (Supp. 1992). After a jury found him guilty of the
lesser included offense of aggravated assault, Tex. Penal Code Ann. § 22.02 (1989), the court
assessed his punishment, enhanced by a prior felony conviction, at fifteen years confinement. In
a single point of error, appellant asserts the trial court erred in admitting, over his objection, the
details of his prior conviction for the felony offense of driving while intoxicated. We overrule
appellant's point of error and affirm the judgment of the trial court.

 An evaluation of appellant's point of error requires a review of the evidence. 
Appellant and Lily Jones had been living with Leonard Sanders in his home in Killeen for about
five weeks prior to the time in question. When Sanders returned home during the late night hours
of September 7, 1991, he found his house in a "mess," a chair, "radio and whatnot" were broken. 
Upon finding Jones on a couch, Sanders related that he saw something "I ain't ever seen before. 
She was beat up severely . . . she just freaked me out when she picked up her head." Appellant
was on another couch asleep, with a rolled up chain, weighing "a couple of pounds" underneath
his hand.

 Jones testified that she and appellant had been drinking and arguing prior to the
altercation, a course of conduct that had occurred on other occasions during their relationship. 
Appellant had a "violent" temper when he was drunk. Jones related that appellant hit her in the
face with his fist "about 15, 20 times," threw her to the floor, kicked her in the ribs, pulled her
by the hair and threw her through the air into a chair. When appellant stopped the attack to get
another drink, Jones attempted to exit the house. Before she could leave, appellant hit her on the
head with a chain, grabbed her by the hair and began hitting her "all over my body" with the
chain wrapped around his fist. Appellant put the chain around her neck and threatened to kill her. 
After throwing Jones to the floor and kicking her, appellant "straddled my body . . . jerked my
head to the right as hard as he could," walked off, and "laid down on the bed and passed out." 
Jones testified she received a broken nose, two broken teeth, a broken toe, permanent loss of the
use of a little finger, loss of ability to see out of one eye for a few days and numerous cuts and
bruises as a result of the attack that lasted two hours.

 Appellant testified he was an alcoholic, had undergone treatment for the problem
and was on parole until 1993 resulting from a five-year term of confinement for a felony D.W.I.
conviction. Appellant did not remember how many times he hit Jones with his fist, but denied
striking her with a chain. Appellant suggested that many of the injuries Jones sustained resulted
from their falling over a coffee table and her kicking at him and hitting the bed. He did not
threaten to kill Jones at any time during the fight that lasted for "maybe two minutes." Appellant
described his condition as "drunk."

 Officer Bruno Matarozzo of the Killeen Police Department testified that he was
contacted by a counselor at the "Families in Crisis Center" to see Jones. Jones was reluctant to
identify her attacker for fear the police would be unable to protect her. In describing the extent
of Jones' injuries, Matarozzo stated, "[I]n routine police work . . . where I deal mainly with
domestic violence crimes she was the worst I had ever seen."

 Appellant's point of error is directed to testimony elicited from him by the
prosecutor over his objection relative to prior D.W.I. convictions. During cross-examination of
appellant by the prosecutor, the following occurred:



Q: Now, this last time you went to court when you got sent to the penitentiary
you committed that offense right over there in front of Luby's, in front of the
Killeen Mall when you flipped your pickup. Do you recall all that?


A: Yes, sir.


 MR. HARRIS [defense counsel]: Object, Your Honor, to the relevance of
this. We've already proven the prior convictions. The facts I think are not
in issue. We're not trying that case. We're trying the case of September the
7th.


 THE COURT: Overruled.


 * * *


Q: You had a .42 blood, blood alcohol test that you -- in that case. A .42 does
that not indicate to you that if you can be driving a truck on the street and be
four times the level of legal intoxication that you could be the very person that
Lily has described to this jury that don't have a clue of how mean they are and
what they've done; is that true? Are you that kind of person?


A: I don't know what you're getting at.


Q: You can drive a truck with a .42 blood alcohol that's what you had in this last
DWI case when I was your prosecutor, didn't you.


A: Yes, sir. That's what they said.


Q: Well, you certainly didn't want to go to trial in there and contest that, did
you?


 [Defense counsel]: Your Honor, I do object to any question about how we
arrived at the judgment here.


 THE COURT: I believe we've gone far enough, Mr. Carroll [Prosecutor].


Q: You pled guilty in that case rather than ask for a jury trial, didn't you?


A: I didn't have the money to pay for no jury trial.


Q: You think you have to have money to tell this judge you want a jury trial?



 [Defense counsel]: Object, I would like a hearing outside the presence of the
jury. Now we're getting so far afield we're talking about prior attorney-client
relationships.


 THE COURT: I'll overrule the objection. Let's move on please.



 Neither the State nor the defendant may introduce into evidence the details of a
prior conviction. Hodge v. State, 631 S.W.2d 754, 759 (Tex. Crim. App. 1982). Contrary to
the State's argument that the appellant's objections were not specific enough to preserve error,
we find that the ground relied on was sufficiently clear in its context to fairly apprise the court
of his objection. See Tex. R. Crim. Evid. Ann. 103 (Pamph. 1992); Lankston v. State, 827
S.W.2d 907, 911 (Tex. Crim. App. 1992).

 We must next determine whether the error was such as to require reversal. 
Reversal is mandated unless the reviewing court "determines beyond a reasonable doubt that the
error made no contribution to the conviction or to the punishment." Tex. R. App. P. Ann.
81(b)(2) (Pamph. 1992). In Harris v. State, 790 S.W.2d 568, 585-88 (Tex. Crim. App. 1990),
the court noted that while Rule 81(b)(2) mandates that the reviewing court focus on whether the
error contributed to the conviction or punishment, it must determine whether it might possibly
have prejudiced the juror's decision-making process.

 The complained-of evidence relates to details of appellant's prior D.W.I.
convictions. The thrust of appellant's defense, as evidenced by defense counsel's argument, was
that appellant did not intend to kill Lily Jones. The jury apparently agreed that this was a valid
defense, finding appellant guilty of the lesser-included offense of aggravated assault. Appellant
testified that his problems were the result of being an alcoholic. His former wife, Judith Linville,
a defense witness, testified that appellant's drinking problem was instrumental in their divorce. 
In his argument, defense counsel noted that appellant had been convicted "at least six and maybe
eight times" of driving while intoxicated. Defense counsel characterized appellant as a "drunk
. . not necessarily a happy drunk . . . . In fact he may be a dangerous drunk." Defense counsel
placed emphasis on that portion of the court's charge defining intoxication to negate appellant's
intent to kill. The testimony about which appellant complains appears to support his defense that
he was not capable of possessing the requisite mental intent to kill because of his intoxication. 
While appellant contended that he was guilty of nothing more than the offense of assault, the
severity of the injuries described by Jones is supported by the testimony of Sanders and
Matarozzo, as well as photographs in evidence depicting her injuries. We have no difficulty in
concluding that the complained-of testimony was harmless beyond a reasonable doubt in that it
made no contribution to the conviction, nor did it prejudice the jurors in the decision-making
process.

 At the punishment stage of the trial, appellant's brother and sister gave additional
testimony relative to his drinking problem. While a copy of the P.S.I. (presentence investigation)
is not in the record, we note that the prosecutor argued without objection that the P.S.I. reflected
that appellant told the presentence people that he used the chain on Jones. We conclude beyond
a reasonable doubt that the complained-of evidence made no contribution to the punishment nor
did it prejudice the court's decision-making process. Moreover, the punishment hearing having
been before the court, it is presumed that the trial court disregarded any inadmissible evidence. 
See Miffleton v. State, 777 S.W.2d 76, 82 (Tex. Crim. App. 1989). Appellant's point of error
is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

[Before Justices Powers, Jones and Davis*]

Affirmed

Filed: August 12, 1992

[Do Not Publish]





* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (1988).