NUMBER 13-05-408-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RENE GARCIA, JR., Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 107th District Court 

of Cameron County, Texas

 



MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Justice Rodriguez



 Appellant, Rene Garcia, Jr., appeals from the trial court's revocation of his
community supervision. By three issues, appellant contends (1) the trial court
abused its discretion in admitting hearsay testimony at the revocation hearing, (2)
he was deprived of his Sixth Amendment right to confront and to cross-examine
declarants of hearsay statements admitted at the hearing, and (3) the evidence is
insufficient to support the trial court's revocation of his community supervision. 
We affirm. 

I. Background

 Appellant was charged by indictment with one count of possession with
intent to deliver a controlled substance, namely cocaine, in an amount of 200
grams or more but less than 400 grams, and one count of possession of marihuana
in an amount of five pounds or less but more than four ounces. See Tex. Health &
Safety Code Ann. §§ 481.115(e), 481.121(b)(3) (Vernon 2003). In a bench trial,
appellant entered a plea of guilty to both counts. The trial court found appellant
guilty on both counts and sentenced appellant to ten years' confinement in the
Texas Department of Criminal Justice-Institutional Division, suspended for ten
years' community supervision. Subsequently, the State filed a motion to revoke
appellant's community supervision alleging, among other things, that appellant
committed a subsequent offense by murdering Juan Ramon Hernandez. (1) Appellant
pled not true to the allegations in the State's motion. Following a hearing, the trial
court found the allegations to be true, revoked appellant's probation, and sentenced
appellant to ten years' confinement in the Texas Department of Criminal Justice-Institutional Division. This appeal ensued.

II. Hearsay

 By his first issue, appellant asserts the trial court abused its discretion in
admitting hearsay testimony at the hearing on the State's motion to revoke his
community supervision. (2)
 

A. Standard of Review and Applicable Law

 We review a trial court's ruling on the admissibility of evidence for an abuse
of discretion. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)
(citing Prystash v. State, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999)). An abuse
of discretion occurs when a trial court's decision lies outside the zone of reasonable
disagreement. Id. (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim.
App. 1990)). 

 Rule 802 of the Texas Rules of Evidence prohibits the admission of hearsay
evidence except as provided by statute or by other rules prescribed pursuant to
statutory authority. Tex. R. Evid. 802. Hearsay is a statement, other than one
made by the declarant while testifying at a trial or hearing, offered in evidence to
prove the truth of the matter asserted. Id. at rule 801(d). 

 A police officer's testimony is not hearsay when it is offered for the purpose
of explaining how a defendant became a suspect rather than for the truth of the
matter asserted. Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). 
In addition, an officer's testimony is not hearsay when it is admitted, not for the
truth, but to establish the course of events and circumstances leading to a
defendant's arrest. Thornton v. State, 994 S.W.2d 845, 854 (Tex. App.-Fort
Worth 1999, pet. ref'd) (citing Reed v. State, 794 S.W.2d 806, 809 (Tex.
App.-Houston [14th Dist.] 1990, pet. ref'd)). "The critical question is whether
there is an inescapable conclusion that a piece of evidence is being offered to prove
statements made outside the courtroom." Id. (quoting Schaffer v. State, 777
S.W.2d 111, 114 (Tex. Crim. App. 1989)).

 The improper admission of hearsay is nonconstitutional error and will be
considered harmless if, after examining the record as a whole, an appellate court
has fair assurance that the error did not influence the fact finder or had but a slight
effect. See Garcia v. State, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004);
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (citing Tex. R.
App. P. 44.2(b); King v. State, 953 S.W.2d 266 (Tex. Crim. App. 1997)). 
Moreover, the improper admission of evidence does not constitute reversible error if
the same facts are proved by other properly admitted evidence. See Perez v. State,
113 S.W.3d 819, 831 (Tex. App.-Austin 2003, pet. ref'd) (citing Brooks v. State,
990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (holding that any error in the
admission of hearsay testimony was harmless in light of other properly admitted
evidence proving same fact)).

B. Analysis

 By his first issue, appellant contends the trial court abused its discretion in
admitting thirty-one instances of hearsay testimony at the probation revocation
hearing by the following six witnesses: Detective Ramiro Rodriguez, Officer Eric
Vasquez, Detective Wilfredo Guerra, Ralph Morales, II, Pamela Cavazos, and
Cynthia Leal.

1. Detective Rodriguez's Testimony

 With respect to Detective Rodriguez, appellant complains of fourteen such
instances. However, we conclude that appellant's contention with respect to
Detective Rodriguez is without merit.

 During the revocation hearing, appellant objected on hearsay grounds to
questions regarding (1) whether Leal had informed him as to how she and her
friends had gotten to Club NCO, (2) whether the investigation revealed how Alex
Villarreal and Hernandez had gotten to Club NCO, (3) whether Detective Rodriguez
knew where Hernandez's car was parked at the club, and (4) whether Detective
Rodriguez had learned where Ectoria Maldonado's truck was parked at the club. (3) 
However, these questions did not call for hearsay testimony on the part of
Detective Rodriguez. Moreover, Detective Rodriguez's answers to these questions
did not relay out-of-court statements. Therefore, Detective Rodriguez's answers to
these questions did not constitute hearsay. See Tex. R. Evid. 801(d). Accordingly,
the trial court properly admitted his testimony in response to these questions.

 In addition, appellant objected on hearsay grounds to Detective Rodriguez's
response to the following question: "And when you say [Villarreal] was a witness,
he was a witness to what?" Detective Rodriguez answered as follows: "He was a
witness to Rene Garcia killing - -." Assuming, without deciding, that Detective
Rodriguez's testimony relayed an out-of-court statement, we nonetheless conclude
that his testimony did not constitute hearsay. We cannot inescapably conclude
that Detective Rodriguez's testimony in this instance was offered to prove
statements made outside the courtroom. See Thornton, 994 S.W.2d at 854 (citing
Schaffer, 777 S.W.2d at 114). Instead, we conclude that Detective Rodriguez's
testimony was admitted to explain how appellant became a suspect in the
investigation and to establish the course of events and circumstances leading to
appellant's arrest for the murder of Hernandez. See Dinkins, 894 S.W.2d at 347;
see also Thornton, 994 S.W.2d at 854 (citing Reed, 794 S.W.2d at 809). 
Therefore, the trial court properly admitted this testimony.

 Appellant further objected on hearsay grounds to questions asking (1) who
the suspect was based on information obtained from Villarreal, (2) whom Villarreal
rode with the evening in question, (3) whether appellant was still a suspect after
Villarreal spoke with the special prosecutor, (4) where Leal was the evening in
question, (5) Detective Rodriguez to write the names of the individuals who were at
the club with Leal, (6) how Leal and her friends had gotten to the club the evening
in question, (7) how Villarreal and Hernandez had gotten to the club the evening in
question, (8) what vehicle authorities were looking for in connection with the
investigation of Hernandez's death, and (9) what Valerie Longoria had informed him
regarding appellant's alleged presence at Club NCO the evening in question. 

 Assuming, without deciding, that these questions called for Detective
Rodriguez to testify to out-of-court statements made by different declarants, we
nonetheless conclude that his responses to these questions did not constitute
hearsay. We cannot inescapably conclude that Detective Rodriguez's responses to
these questions were offered to prove statements made outside the courtroom. 
See Thornton, 994 S.W.2d at 854 (citing Schaffer, 777 S.W.2d at 114). Instead,
we conclude that Detective Rodriguez's testimony was admitted to explain how
appellant became a suspect in the investigation and to establish the course of
events and circumstances leading to appellant's arrest for the murder of Hernandez. 
See Dinkins, 894 S.W.2d at 347; see also Thornton, 994 S.W.2d at 854 (citing
Reed, 794 S.W.2d at 809). Therefore, the trial court properly admitted Detective
Rodriguez's testimony in response to these questions.

2. Officer Vasquez's Testimony

 With respect to Officer Vasquez, appellant complains of one instance of
hearsay testimony. Specifically, appellant objected on hearsay grounds to a
question asking Officer Vasquez what two witnesses had informed him at the 
crime scene. Officer Vasquez testified that the witnesses had informed him that
they had "seen a green Ford Focus leaving the parking lot just as the shooting - -
just after the shooting occurred."

 Assuming, without deciding, that Officer Vasquez's testimony was hearsay
and the trial court abused its discretion in admitting such testimony, we
nonetheless conclude that the admission of this testimony was harmless. Prior to
Officer Vasquez's testimony, Morales testified that appellant had borrowed his
green Ford Focus the evening in question. Morales also testified that appellant had
acknowledged that his car "was there." In addition, Detective Rodriguez testified
that based on the investigation, officers were looking for a green Ford Focus in
connection with Hernandez's murder. Thus, in light of this properly admitted
evidence and viewing the record as a whole, we have a fair assurance that any
purported error in relation to the admission of this testimony neither influenced the
fact finder nor had more than a slight effect. See Garcia, 126 S.W.3d at 927;
Johnson, 967 S.W.2d at 417 (citing Tex. R. App. P. 44.2(b); King, 953 S.W.2d at
271); see also Perez, 113 S.W.3d at 831 (citing Brooks, 990 S.W.2d at 287). 

3. Detective Guerra's Testimony

 With respect to Detective Guerra, appellant complains of five instances of
hearsay testimony. Appellant objected on hearsay grounds to testimony regarding
(1) whether Noe Zavala was a person of interest in the investigation of Hernandez's
murder, and (2) appellant's wife receiving a phone call after giving her statement 
to the police. However, Detective Guerra did not relay out-of-court statements
during this complained of testimony; therefore, this testimony did not constitute
hearsay. See Tex. R. Evid. 801(d). Accordingly, the trial court properly admitted
this testimony.

 In addition, appellant objected on hearsay grounds to questions relating to (1)
what kind of relationship Hernandez had with Eva Ramirez, appellant's wife, and (2)
where Hernandez was when he was shot. Assuming, without deciding, that these
questions called for Detective Guerra to testify to out-of-court statements made by
different declarants, we nevertheless conclude that his responses to these
questions did not constitute hearsay. We cannot inescapably conclude that
Detective Guerra's responses to these questions were offered to prove statements
made outside the courtroom. See Thornton, 994 S.W.2d at 854 (citing Schaffer,
777 S.W.2d at 114). Rather, we conclude that Detective Guerra's testimony was
admitted to explain how appellant became a suspect in the investigation and to
establish the course of events and circumstances leading to appellant's arrest for
the murder of Hernandez. See Dinkins, 894 S.W.2d at 347; see also Thornton,
994 S.W.2d at 854 (citing Reed, 794 S.W.2d at 809). Therefore, the trial court
properly admitted Detective Guerra's testimony in response to these questions. 

 Appellant further complains of the following excerpt of testimony offered
by Detective Guerra:

 Q. Okay. And the statement was that Rene Garcia was the
shooter?


 A. That Rene Garcia was the shooter - -


 Defense Counsel: Hearsay, Your Honor.


 A. - - and he could not believe that - -


 The Court: Overruled.


 A. - - that Rene Garcia would have done that.


 Q. Alex Villarreal told you in no uncertain terms that he
witnessed Rene Garcia shoot Pandi; is that correct?


 Defense Counsel: Objection. Leading and hearsay, Your
Honor.

 

 The Court: Overruled.


 Q. Is that correct?

 

 A. Yes, sir.


 Assuming, without deciding, that this testimony by Detective Guerra was
hearsay and the trial court abused its discretion in admitting such testimony, we
nonetheless conclude that the admission of this testimony was harmless. Prior
to this testimony, Detective Guerra had stated that Villarreal had identified
appellant as the "subject." Leal testified that the person running away from
Hernandez's car after the shots were fired resembled appellant. Detective
Rodriguez testified that Longoria had informed him that she had seen appellant at
Club NCO the evening in question. In addition, Morales testified that he had
loaned his car to appellant the evening in question and that appellant had
acknowledged that the car "was there." Morales also testified that appellant
told him he should "stay out of Harlingen" and that "if [Morales] got pulled in by
the police, that [appellant] would have his attorney take care of everything." 
Thus, in light of this properly admitted evidence and viewing the record as a
whole, we have a fair assurance that any purported error in relation to the
admission of Detective Guerra's testimony neither influenced the fact finder nor
had more than a slight effect. See Garcia, 126 S.W.3d at 927; Johnson, 967
S.W.2d at 417 (citing Tex. R. App. P. 44.2(b); King, 953 S.W.2d at 271); see
also Perez, 113 S.W.3d at 831 (citing Brooks, 990 S.W.2d at 287). 

4. Ralph Morales's Testimony

 As to Ralph Morales, II, appellant complains of two instances of alleged
hearsay testimony. (4) Specifically, appellant objected on hearsay grounds to
testimony by Morales regarding what he decided to do after seeing on the news
that someone had been killed at Club NCO in the City of Harlingen the evening in
question. However, Morales did not relay out-of-court statements in the
complained of testimony. Therefore, the complained of testimony did not
constitute hearsay. See Tex. R. Evid. 801(d). Accordingly, the trial court properly
admitted this testimony.

5. Pamela Cavazos's Testimony

 In relation to Pamela Cavazos, appellant complains of four instances of
hearsay testimony. (5) Appellant objected on hearsay grounds to questions regarding
(1) how Cavazos would describe the relationship between Hernandez and appellant,
and (2) whether there were any problems between Hernandez and appellant. The
questions, however, did not call for hearsay testimony from Cavazos. Additionally,
Cavazos's answers to these questions did not relay out-of-court statements, and
therefore, did not constitute hearsay. See id. Thus, the trial court properly
admitted her testimony regarding these questions. 

 Appellant further complains of the following two excerpts of testimony
provided by Cavazos:

 Q. And who was Juan Hernandez going out with?


 Defense Counsel: Hearsay, Your Honor.

 

 The Court: Overruled.


 A. He was seeing Eva [Ramirez], [appellant's] wife.


 . . . .


 Q. And how did you find that out?


 A. Pandi told me.


 Defense Counsel: Hearsay, Your Honor.


 The Court: Overruled.


 Q. Pandi being Juan Hernandez?


 A. Yes, Juan Hernandez.


 Q. What did he tell you?


 Defense Counsel: Hearsay, Judge.


 The Court: Overruled.


 A. That he was having like a fling, I guess you would say, with
her.


 Q. And did you come to find out whether the defendant knew
about it?


 Defense Counsel: Hearsay, Judge.


 The Court: Overruled.


 A. Pandi had told me that [appellant] confronted him about it.


 Q. Confronted him about it?


 A. Yes.


 Q. Do you know when this confrontation would have taken place?


 Defense Counsel: Hearsay, Judge.


 The Court: Overruled.


 A. I believe it was about three weeks before the shooting.


 We conclude that the foregoing testimony offered by Cavazos regarding (1) 
whom Hernandez was going out with, (2) Hernandez having "like a fling" with
appellant's wife, and (3) appellant confronting Hernandez about his relationship
with appellant's wife is hearsay. This testimony by Cavazos relays out-of-court
statements made by Hernandez that were offered for the truth of the matters
asserted therein, and therefore, constituted hearsay. See Tex. R. Evid. 801(d). 
Accordingly, we conclude the trial court abused its discretion in admitting this
testimony over appellant's objections. See id. at rule 802.

 Nevertheless, we conclude that the admission of this testimony was
harmless. Detective Guerra testified regarding the relationship between Ramirez
and Hernandez; specifically, Detective Guerra testified that Ramirez had stated that
she was seeing Hernandez. In addition, Detective Rodriguez testified that when he
spoke to appellant about Ramirez's affair with Hernandez, appellant "got up,
walked around, had his fists clinched, just looked at me and asked me, you know,
how did I know about the affair." Thus, in light of this properly admitted evidence
and viewing the record as a whole, we have a fair assurance that any purported
error in relation to the admission of Cavazos's testimony neither influenced the fact
finder nor had more than a slight effect. See Garcia, 126 S.W.3d at 927; Johnson,
967 S.W.2d at 417 (citing Tex. R. App. P. 44.2(b); King, 953 S.W.2d at 271); see
also Perez, 113 S.W.3d at 831 (citing Brooks, 990 S.W.2d at 287). 

6. Cynthia Leal's Testimony

 As to Cynthia Leal, appellant complains of three instances of hearsay
testimony. Leal testified that she, Cavazos, Maldonado, Hernandez, and Villarreal
had met at Cavazos's apartment before meeting at Club NCO. Appellant objected,
on hearsay grounds, to a question regarding whether Leal knew why Hernandez
and Villarreal were the first to leave Cavazos's apartment. This question, however,
did not call for hearsay testimony from Leal. Moreover, Leal's answer to the
question did not relay an out-of-court statement; therefore, her answer did not
constitute hearsay. See Tex. R. Evid. 801(d). Accordingly, the trial court properly
admitted her testimony in response to this question.

 Appellant further complains of the following two excerpts of testimony
provided by Leal:


 Q: Okay. And do you know if Pandi met with Eva [Ramirez]?


 Defense Counsel: Your Honor, that's hearsay, Your Honor.

 

 The Court: Overruled.


 A. No. I just - - well, he just - - they just said they were going over
there, but I don't know. Personally, no, I don't.


 . . . .


 Q. All right. Did you and Pandi have a conversation earlier during
the week about the defendant?


 A. Yes.


 Q. And what was the conversation about?


 Defense Counsel: Your Honor, if she's going to make reference
to what was told to her, it's hearsay.

 

 The Court: Overruled.


 Q. What were you and Pandi talking about?


 A. He had told me - -


 Q. Can you speak up a little? I can't hear you, ma'am.


 A. He had told me that they had gotten into it because, I guess, he
was sleeping with his wife, and that Rene had told him - - well,
he found out about it; and he had told him that he was going to
- - that if he didn't kill him, he was going to kill him first, or
something like that.


 We conclude that the foregoing testimony offered by Leal regarding (1)
whether she knew if Hernandez had met with appellant's wife before going to the
club, and (2) the context of a conversation she had with Hernandez relating to
appellant during the week of Hernandez's murder is hearsay. This testimony by
Leal relays out-of-court statements made by other declarants that were offered for
the truth of the matters asserted therein, and therefore, constituted hearsay. See
Tex. R. Evid. 801(d). Accordingly, the trial court abused its discretion in admitting
this testimony over appellant's objections. See id. at rule 802.

 Nevertheless, we conclude that the admission of this testimony was
harmless. Detective Guerra testified that Ramirez had stated that she was seeing
Hernandez. In addition, when asked on recross-examination to clarify her
testimony "that if he didn't kill him, he was going to kill him first, or something like
that," Leal agreed that Hernandez did not specify whether he was talking about
someone wanting to kill him regarding drugs or whether he was referring to
appellant wanting to kill him. Therefore, in light of this properly admitted evidence
and viewing the record as a whole, we have a fair assurance that any purported
error in relation to the admission of Leal's testimony neither influenced the fact
finder nor had more than a slight effect. See Garcia, 126 S.W.3d at 927; Johnson,
967 S.W.2d at 417 (citing Tex. R. App. P. 44.2(b); King, 953 S.W.2d at 271); see
also Perez, 113 S.W.3d at 831 (citing Brooks, 990 S.W.2d at 287). 

 Having determined that any error in the admission of hearsay testimony at
the revocation hearing was harmless, we overrule appellant's first issue.



III. Sufficiency of the Evidence

 By his third issue, appellant asserts the evidence is insufficient to support the
trial court's revocation of his community supervision. 

A. Standard of Review and Applicable Law

 We review a trial court's order revoking probation for an abuse of discretion.
Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984) (citing Caddell v.
State, 605 S.W.2d 275 (Tex. Crim. App. 1980)). In determining whether the
evidence is sufficient to support revocation, we view the evidence in the light most
favorable to the trial court's ruling. Garrett v. State, 619 S.W.2d 172, 174 (Tex.
Crim. App. 1981) (citing Fernandez v. State, 564 S.W.2d 771 (Tex. Crim. App.
1978); Jones v. State, 589 S.W.2d 419 (Tex. Crim. App. 1979)).

 To revoke a defendant's probation, the State must prove by a preponderance
of the evidence that the probationer violated the terms of probation as alleged in
the motion to revoke. See Cobb v. State, 851 S.W.2d 871, 873 (Tex. Crim. App.
1993). Proof of any one of the alleged violations is sufficient to support 
revocation of a defendant's probation. Moore v. State, 605 S.W.2d 924, 926
(Tex. Crim. App. 1980) (citing Jones v. State, 571 S.W.2d 191 (Tex. Crim. App.
1978)). The State satisfies the preponderance-of-the-evidence standard when the
greater weight of the credible evidence creates a reasonable belief that a defendant
violated a condition of his probation. Johnson v. State, 943 S.W.2d 83, 85 (Tex.
App.-Houston [1st Dist.] 1997, no writ) (citing Jenkins v. State, 740 S.W.2d 435,
437 (Tex. Crim. App. 1983)).

 In order to prove that appellant committed the offense of murder, thereby
violating a condition of his probation, the State had to prove that appellant 
intentionally or knowingly caused Hernandez's death. See Tex. Pen. Code Ann. §
19.02(b)(1) (Vernon 2003). A person acts intentionally when it is his conscious
objective or desire to engage in the conduct or cause the result. Id. § 6.03(a). A
person acts knowingly when he is aware that his conduct is reasonably certain to
cause the result. Id. § 6.03(b). In addition, intent may be inferred from
circumstantial evidence, such as the acts, words, and conduct of appellant. 
Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). 

B. Analysis

 By his third issue, appellant asserts the evidence is insufficient to support the 

revocation of his probation. Specifically, appellant contends that (1) the State was
required to prove his violation of probation with direct proof, but failed to do so, (6)
and (2) the trial court relied on inadmissible hearsay to revoke his probation
"because other than the hearsay testimony, there was no other evidence that the
trial court could have used to justify its finding that Appellant violated the terms
and conditions of his probation." We disagree.

 Here, the State provided direct evidence of appellant's guilt through the
testimony of Detective Guerra. Specifically, Detective Guerra testified that
Villarreal had identified appellant as the subject. Detective Guerra stated that
Hernandez was shot on the passenger side of the vehicle. Detective Guerra then
testified that "Villarreal was on the passenger side of the vehicle when that
incident occurred. And what happened is that he heard the gunshots and ducked
down. And [] he was ducking down crawling away from where he had seen the
subject behind him, which he identified as [appellant] . . . ."

 In addition, Leal testified that the person running away from Hernandez's car
after the shots were fired resembled appellant. Detective Rodriguez testified that
Longoria had informed him that she had seen appellant at Club NCO the evening in
question. Morales testified that appellant had borrowed his green Ford Focus the
evening in question. Detective Rodriguez testified that based on the investigation,
officers were looking for a green Ford Focus in connection with Hernandez's
murder. Finally, Detective Rodriguez also stated that when he spoke to appellant
about Ramirez's affair with Hernandez, appellant "got up, walked around, had his
fists clinched."

 The foregoing testimony presented by the State at the revocation was
admissible, non-hearsay evidence. (7) Based on this evidence alone, we conclude that
the trial court could have inferred the requisite intent essential to the commission of
the offense of murder on the part of appellant from his acts, words, and conduct. 
See Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003); Guevara, 152 S.W.3d at
50. Therefore, viewing the evidence in the light most favorable to the trial court's
ruling, we conclude that the greater weight of the credible evidence creates a
reasonable belief that appellant intentionally caused Hernandez's death. See Tex.
Pen. Code Ann. § 19.02(b)(1); Cobb v. State, 851 S.W.2d at 873; Garrett, 619
S.W.2d at 174 (citing Fernandez, 564 S.W.2d at 771; Jones, 589 S.W.2d at 421);
Johnson, 943 S.W.2d at 85. Thus, we conclude that the evidence was sufficient
to support the trial court's revocation of appellant's probation.

 Accordingly, we overrule appellant's third issue. 

IV. Confrontation Clause

 By his second issue, appellant asserts that he was deprived of his Sixth
Amendment right to confront and to cross-examine declarants of hearsay
statements admitted at the revocation hearing. (8) We conclude, however, that
appellant failed to preserve this issue for our review.

 The right of confrontation is a constitutional right. See U.S. Const. amend.
VI; Carroll v. State, 916 S.W.2d 494, 496 (Tex. Crim. App. 1996). However, it is
well settled that even a constitutional right may be waived if not properly
preserved. Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). In
order to preserve a complaint for appellate review, Texas Rule of Appellate
Procedure 33.1(a)(1) requires that a party make a timely request, objection, or
motion that states the grounds for the ruling sought by the party with sufficient
specificity to make the trial court aware of the complaint, unless the specific
grounds are apparent from the context. Tex. R. App. P. 33.1(a)(1). An objection is
timely when it is made before the evidence is admitted or as soon as the
objectionable nature of the evidence becomes apparent. See Johnson v. State,
878 S.W.2d 164, 167 (Tex. Crim. App. 1994).

 Here, appellant waited until closing arguments at the revocation hearing to
raise a general Confrontation Clause objection. Appellant objected as follows: 

 I know the that the Court has allowed a lot of hearsay in this case
perhaps to get a picture of what actually happened; however, we
cannot disregard the [C]onstitution of the United States, specifically
the defendant's right to confrontation, the Sixth Amendment right.


 . . . My client has been denied his right of confrontation, and I'd ask
the Court to not give any weight to that testimony on the grounds
that it's clearly hearsay, Your Honor.


 We conclude, however, that appellant's objection was neither timely nor
sufficiently specific. See Tex. R. App. P. 33.1(a)(1). Appellant's objection was not
timely because it was not made before the complained of testimony was admitted
or as soon as the objectionable nature of the testimony became apparent. See
Johnson, 878 S.W.2d at 167. Furthermore, appellant's general objection to
hearsay testimony on confrontation grounds was not specific enough to apprise the
trial court of the complained of testimony. See Tex. R. App. P. 33.1(a)(1).

 Thus, we overrule appellant's second issue. 

V. Conclusion

 Accordingly, we affirm the judgment of the trial court.


 NELDA V. RODRIGUEZ

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 28th day of June, 2007.
1. The State also alleged that appellant violated the terms of his community supervision by failing
to (1) avoid injurious or vicious habits, (2) pay his community supervision fees, and (3) obtain a G.E.D. 
The State, however, did not present any evidence in support of the foregoing allegations at the
revocation hearing and does not now assert that the trial court's ruling should be upheld on any basis
other than the allegation related to the death of Juan Ramon Hernandez.
2. Appellant also asserts that the "only evidence the trial court had to justify the revocation of
Appellant's probation was precisely the inadmissible hearsay" and that the trial court abused its
discretion in considering such hearsay testimony. We construe this assertion as a challenge to the
sufficiency of the evidence to support the trial court's revocation of appellant's probation, which
appellant raises by his third issue. Therefore, we will address this contention in our analysis of
appellant's third issue.


Appellant further contends that the trial court erred in admitting hearsay testimony relaying out-of-court
statements made by Alex Villarreal and Valerie Longoria because it denied him his right to cross-examine
Villarreal and Longoria. We construe this contention as a Confrontation Clause challenge, which
appellant raises by his second issue. Therefore, we will address this assertion in our analysis of
appellant's second issue.


3. The record establishes that Hernandez was shot near his vehicle in the parking lot of Club NCO. 
The record also reveals that Villarreal and Hernandez, who went to Club NCO in one vehicle, were to
meet Cynthia Leal, Ectoria Maldonado, and Pamela Cavazos, who went to Club NCO in a separate
vehicle, the night in question.
4. Appellant also complains of a third instance of alleged hearsay testimony regarding what
Morales was thinking after appellant allegedly told him to stay away from the City of Harlingen, where
the murder of Hernandez took place. However, appellant's objection to the question, "And what were
you thinking?" was based on relevance grounds rather than on hearsay grounds. Thus, we conclude
that appellant failed to preserve this challenge for appellate review on hearsay grounds. See Willis v.
State, 785 S.W.2d 378, 382-83 (Tex. Crim. App. 1989) (citing Thomas v. State, 723 S.W.2d 696, 700
(Tex. Crim. App. 1986); Hodge v. State, 631 S.W.2d 754, 757 (Tex. Crim. App. 1982); Williams v.
State, 549 S.W.2d 183, 187 (Tex. Crim. App. 1977) (providing that it is well-established that a point
of error on appeal must correspond to the precise objection made in the trial court)). Accordingly, this
sub-issue is waived.
5. While appellant complains of a fifth instance of testimony offered by Cavazos regarding
Villarreal yelling immediately after the incident in question that somebody was shooting, he 
nevertheless concedes that this testimony, although hearsay, was admissible because it fell under the
excited utterance exception to the hearsay rule. See Tex. R. Evid. 803(2) (providing that a statement
relating to a startling event while the declarant was under the stress of excitement caused by the event
is not excluded by the hearsay rule). Therefore, we need not review this challenge to Cavazos's
testimony.
6. See Willis v. State, 2 S.W.3d 397, 400 (Tex. App.-Austin 1999, no pet.) (citing 42 George
E. Dix & Robert O. Dawson, Criminal Practice and Procedure, § 40.86 (Tex. Practice 1995) (holding that
the State may seek to prove the defendant engaged in criminal conduct during the community
supervision period by direct proof, using a judgment of conviction, or using evidence from a criminal
trial)); but see Battle v. State, 571 S.W.2d 20, 22 (Tex. Crim. App. 1978) (citing Stogsdill v. State, 532
S.W.2d 481, 486 (Tex. Crim. App. 1977) (providing that when there is no direct evidence of a
defendant's guilt, the State's case may be supported by circumstantial evidence alone if the
incriminating circumstances are such as to exclude every reasonable hypothesis except the accused's
guilt)).
7. In addition to this admissible, non-hearsay evidence, there was testimony by Morales that (1)
appellant acknowledged that the car "was there"; (2) appellant told him he should "stay out of
Harlingen"; and (3) appellant told him that "if [Morales] got pulled in by the police, that [appellant]
would have his attorney take care of everything." We note that appellant neither objected to this
testimony on hearsay grounds at the hearing nor complains of this testimony on appeal. Moreover,
Texas Rule of Evidence 802 provides that inadmissible hearsay admitted without objection shall not be
denied probative value merely because it is hearsay. See Tex. R. Evid. 802. Therefore, assuming
without deciding, that this testimony constituted hearsay, it cannot be denied probative value merely
because it is hearsay. Thus, the trial court was permitted to consider this evidence.
8. To the extent appellant may assert that he was denied due process under the Fourteenth
Amendment of the Constitution of the United States, we conclude the briefing is inadequate. See Tex.
R. App. P. 38.1(h) (providing that appellant's brief must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record). Therefore, we will not
consider such a contention.