

# IN THE
## TENTH COURT OF APPEALS

No. 10-11-00380-CR
No. 10-11-00381-CR

**WILLIAM GREGORY DALE,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 77th District Court
### Freestone County, Texas
### Trial Court Nos. 09-194-CR and 09-202-CR

## MEMORANDUM OPINION

In two separate cause numbers, appellant, William Gregory Dale, was convicted

of aggravated sexual assault of a child (appellate cause number 10-11-00380-CR), a first-

degree felony, and indecency with a child (appellate cause number 10-11-00381-CR), a

second-degree felony.[1]  *See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(i), (b)(1), (e),

---

[1] Specifically, in appellate cause number 10-11-00380-CR, Dale was charged with "intentionally or knowingly caus[ing] the penetration of the sexual organ of [M.B.,] a child who was then and there younger than 14 years of age and not the spouse of the defendant, by the defendant's finger."  In appellate cause number 10-11-00381-CR, it was alleged that Dale "with intent to arouse or gratify the

21.11(a)(1), (d) (West 2011 & Supp. 2011). By several issues in both appellate cause numbers, Dale challenges his convictions. We affirm as modified.

## I. BACKGROUND

On Memorial Day weekend 2009, the victim in this case, fifteen-year-old M.B., traveled with her best friend, K.I., and K.I.'s family to the family lake house on Richland-Chambers Lake in Freestone County, Texas.[2] M.B. had visited the lake house many times in the past, and K.I.'s family knew M.B. very well. During the weekend in question, M.B. and K.I., along with several other family members, participated in activities, such as tubing and riding four-wheel all-terrain vehicles. Dale was among the many members of K.I.'s family that visited the lake house that weekend. Dale visited the lake house frequently, and M.B. knew Dale very well.

The first incident allegedly transpired late on the Sunday night of the holiday weekend. Typically, the girls would sleep on air mattresses in a converted garage, which was on the first story of the three-story lake house. On Sunday night, M.B., K.I., and several other family members chose to watch a movie in the converted garage.[3] According to several witnesses, everyone had been roasting marshmallows late into the night until they decided to watch a movie at around 2 or 3 o'clock in the morning. M.B.

sexual desire of said defendant, intentionally or knowingly engaged in sexual conduct with [M.B.] by touching the breast of [M.B.] with the defendant's hand, a child younger than 17 years of age and not the spouse of the defendant."

[2] It is undisputed that, at the time of the incidents, M.B. was thirteen years old.

[3] M.B. testified that they watched the movie "Are We There Yet?" that night; however, K.I., and K.I.'s mother and father all testified that they watched "Jurassic Park III" that night and that the girls had watched "Are We There Yet?" earlier in the weekend. Dale's trial counsel emphasized these statements to show inconsistencies in M.B.'s testimony.

and K.I. were lying on an air mattress watching the movie. Dale was positioned in between M.B. and K.I. on the air mattress.[4] K.I.'s mother and father were on nearby couches, K.I.'s grandfather was sitting on the stairs, and the boyfriend of K.I.'s cousin was also in the room. As Dale states in his brief, "[i]t was very late and the family began to fall asleep as they watched the movie."

M.B. testified that the sheets on the air mattress covered her and that the lights in the room were off. M.B. eventually fell asleep. However, she was awakened by someone touching her. M.B. stated that Dale was fingering her vagina and that he was rubbing her breasts. M.B. recalled that when this transpired, the movie was over and the room was "dark." According to M.B., Dale stopped when K.I.'s mother "told him to move" to his air mattress. M.B. denied that she had any disagreements with K.I.'s family or that she had any reason to make up these allegations. M.B. also testified that she did not say anything to Dale because she was scared to lose K.I.'s family and that she tried to act normal.

The next morning, K.I. and her mother remembered M.B. specifically requesting to ride the four-wheeler and asking Dale to join them. K.I.'s mother insisted that if the girls were driving the four-wheeler away from the house that an adult had to accompany them. K.I. testified that, before the girls went out that morning, they ate breakfast with Dale and other family members. K.I. noted that M.B. playfully pulled

---

[4] There were conflicts in the testimony as to how Dale was positioned between M.B. and K.I. Some witnesses recalled that Dale was lying in between the girls. K.I.'s mother, who is Dale's sister, testified that Dale was sitting upright during the whole movie. In addition, M.B. testified that Dale was underneath the covers; however, K.I. and her mother and father all testified that Dale was on top of the covers.

Dale's leg hair with her toes. After eating breakfast, the girls and Dale drove the four-wheeler to see donkeys at a nearby house. M.B. drove the four-wheeler, and Dale was positioned in between M.B. and K.I. M.B. was wearing her swim suit, shorts, and a T-shirt. M.B. alleged that Dale touched her "inappropriately" while they were driving to see the donkeys. M.B. testified that Dale rubbed her private area and thighs with his hands while she was driving the four-wheeler and that this had happened before. However, M.B. denied that Dale touched her breasts while on the four-wheeler. M.B. asked Dale to switch places with her, but Dale insisted that she "just keep driving."

Initially, M.B. did not tell her grandparents, whom she was living with at the time, about the incidents, but she did tell a friend, E.R., about it.[5] M.B. later told her school counselor, Mrs. Nissen, about the incidents. After making the allegations, K.I. stopped being friends with M.B. because K.I. believed the allegations to be false. In addition, word about the incidents soon "got around school." Due to the rumors at school, M.B. decided to transfer schools.

E.R. remembered that M.B. had told her about the incidents the day after they had happened. E.R. produced a written statement for police, which stated the following, in pertinent part:

> [M.B.] texted me on Monday evening, May 25th, and told me that over the weekend, at the lake, something bad had happened to her. . . . And she had told me she had been touched and she told me that the guy was [K.I.'s] uncle's friend. She said the guy was on top of her, and she was too

---

[5] Dale's counsel emphasized M.B.'s living situation at trial. In particular, M.B. testified that her father was in prison; that her mother lived in Mississippi and was not active in her life; that she fought occasionally with her grandparents about rules; and that she had transferred schools several times. Dale introduced several comments made by M.B. on her MySpace page, which documented her living situation. One of the comments made by M.B. on her MySpace page is the basis for one of Dale's issues.

scared to tell him to stop. She said she was also too scared to tell an adult. She said it happened at [K.I.'s] lake house."

E.R. later clarified that she made a mistake in her written statement. She noted that M.B. told her that Dale had committed the alleged acts, not Dale's friend.

Regarding the movie incident, K.I.'s mother testified that Dale was simply "goofing with the girls" while they were lying on the air mattress and that he told the girls to "Wake up! Watch the movie!" K.I.'s mother noted that she could see that the girls were under the covers but that Dale was not. K.I.'s mother denied seeing Dale touch M.B. inappropriately. Additionally, K.I. did not recall seeing Dale ever rub M.B.'s thighs or touching M.B.'s breasts. K.I. did note that M.B. acted normal the entire weekend, except for one comment where M.B. told K.I. that her father was going to buy her a lake house and a sports car—something K.I. found odd because M.B.'s father is in prison. K.I.'s father also testified that he did not see anything unusual occur that weekend, though he admitted that he started to fall asleep during the movie.

At the conclusion of the evidence, the jury convicted Dale in both cause numbers and assessed punishment at: (1) fifteen years' confinement with a $10,000 fine in appellate cause number 10-11-00380-CR; and (2) six years' confinement with a $10,000 fine in appellate cause number 10-11-00381-CR. The trial court ordered both sentences to run concurrently. This appeal followed.

## II.   THE TRIAL COURT'S EXCLUSION OF EVIDENCE FROM THE VICTIM'S MYSPACE PAGE

In his second issue in appellate cause number 10-11-00380-CR and in his first issue in appellate cause number 10-11-00381-CR, Dale argues that the trial court erred in

refusing to admit an entry M.B. made on her MySpace page where she referred to herself as a "bitch/whore." In particular, Dale alleges that the admission of the statement would not have violated Texas Rule of Evidence 412 and that the trial court's refusal to admit the statement limited his cross-examination of M.B. *See* TEX. R. EVID. 412. We disagree.

## A.    Standard of Review

We review a trial court's decision to exclude evidence under an abuse-of-discretion standard. *Thomas v. State*, 137 S.W.3d 792, 794 (Tex. App—Waco 2004, no pet.) (citing *Mozon v. State*, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999)). An abuse of discretion occurred when a trial court's decision is so clearly wrong that it lies outside the "zone of reasonable disagreement." *Id.* (citing *Gonzalez v. State*, 117 S.W.3d 831, 839 (Tex. Crim. App. 2003); *Burks v. State*, 40 S.W.3d 698, 700 (Tex. App.—Waco 2001, no pet.)).

## B.    Applicable Law

The Sixth Amendment protects the defendant's right not only to confront the witnesses against him, but to cross-examine them as well. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L .Ed. 2d 347 (1974). "The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316-17, 94 S. Ct. at 1110. The accused is entitled to great latitude to show a witness' bias or motive to falsify his testimony. *See Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. [Panel Op.] 1982).

However, the right of cross-examination is not unlimited. The trial court retains wide latitude to impose reasonable limits on cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1434-35, 89 L. Ed. 2d 674 (1986). The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission. *See Hodge*, 631 S.W.2d at 758. These potential risks include "the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time." *Id.*; *see also Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993).

**C.   Discussion**

The particular statement which Dale complains about is M.B.'s MySpace message to E.R. stating: "Thanks for turning everybody against me . . . 'cause I'm a bitch/whore." Texas Rule of Evidence 412(a) specifically states that: "In a prosecution for sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault, reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible." TEX. R. EVID. 412(a). Subsection (b) of rule 412, however, outlines some exceptions in which evidence of specific instances of past sexual behavior of the victim may be admitted in a criminal trial. *Id.* at R. 412(b). In particular, rule 412(b) provides that:

> In a prosecution for sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless:

(1) such evidence is admitted in accordance with paragraphs (c) and (d) of this rule;

(2) it is evidence:

(A) that is necessary to rebut or explain scientific or medical evidence offered by the State;

(B) of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged;

(C) that relates to the motive or bias of the alleged victim;

(D) is admissible under Rule 609; or

(E) that is constitutionally required to be admitted; and

(3) its probative value outweighs the danger of unfair prejudice.

*Id.*

"Sexual behavior" is not defined in the rules of evidence. *See Thomas*, 137 S.W.3d at 794-95. Nevertheless, this Court noted that, prior to the codification of rule 412, the Court of Criminal Appeals reviewed the definition of "sexual conduct" in former section 22.065 of the Texas Penal Code, the precursor to rule 412.[6] *See id.* (citing *Ex parte Rose*, 704 S.W.2d 751, 756 (Tex. Crim. App. 1984) (citing Act of May 27, 1983, 68th Leg., R.S., ch. 977, § 4, 1983 Tex. Gen. Laws 5311 (amended 1983) (current version at TEX. R.

---

[6] Former section 22.065 of the Texas Penal Code states:

(a)    Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct may be admitted under Sections 22.011 and 22.021 of this code only if, and only to the extent that, the judge finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Act of May 27, 1983, 68th Leg., R.S., ch. 977, § 4, 1983 Tex. Gen. Laws 5311 (amended 1983) (current version at TEX. R. EVID. 412).

EVID. 412))).  The Court found "sexual" to mean "of or pertaining to sex; sexual matters."  *Id.* (citing *Ex parte Rose*, 704 S.W.2d at 756).

In the present case, M.B. referred to herself as a "bitch/whore" on her MySpace page.  The plain and ordinary meaning of the term "whore" is "a woman who engages in sexual acts for money."  MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1351 (10th ed. 1993).  On the other hand, the plain and ordinary meaning of the term "bitch" is "a lewd or immoral woman."  *Id.* at 117.  We believe that these terms are commonly used to reference "sexual matters," which would violate not only the agreed-upon motion in limine between the parties in this case but also rule 412.  *See* TEX. R. EVID. 412(a).

In addition, it is our opinion that M.B.'s statement on her MySpace page does not fall within any of the exceptions listed in rule 412(b).  *See id.* at R. 412(b).  Clearly, admission of the statement was not necessary to explain or rebut scientific or medical evidence, as the State did not offer any such evidence.  In addition, the statement does not concern the history between Dale and M.B., nor does it go to the issue of consent.  Furthermore, this statement would not be admissible under rule 609 because it does not concern anything about M.B. being convicted of a crime.  *See* TEX. R. EVID. 609.  And, the statement is not constitutionally required to be admitted as it does not invoke any sort of constitutional issue.

Finally, we fail to see how this statement was necessary to demonstrate motive or bias.  *See Hodge*, 631 S.W.2d at 758.  Dale had ample opportunity to cross-examine M.B. to discern motive or bias.  Instead, this statement likely would have caused undue prejudice and embarrassment to M.B. and likely would have mislead, confused, and

inflamed the jury. *See Chambers*, 866 S.W.2d at 27; *see also Hodge*, 631 S.W.2d at 758. As such, we cannot say that the trial court's decision to exclude this statement was outside the zone of reasonable disagreement as to constitute error. *See Thomas*, 137 S.W.3d at 794; *see also Gonzalez*, 117 S.W.3d at 839; *Burks*, 40 S.W.3d at 700. Furthermore, we cannot conclude that Dale's right of confrontation was violated by the trial court's exclusion of this statement. *See Davis*, 415 U.S. at 316-17, 94 S. Ct. at 1110. Thus, we overrule Dale's second issue in appellate cause number 10-11-00380-CR and his first issue in appellate cause number 10-11-00381-CR.

### III.    DALE'S OBJECTION DURING THE STATE'S CLOSING ARGUMENT

In his third issue in appellate cause number 10-11-00380-CR and in his second issue in appellate cause number 10-11-00381-CR, Dale argues that the trial court erred in overruling his objection to the State's closing argument pertaining to his alleged failure to adduce impeaching evidence against the complainant. In particular, Dale contends that the complained-of statements made by the State constituted an improper jury argument.

### A.    Applicable Law

Proper jury argument must encompass one of the following: (1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). To determine whether a party's argument properly falls within one of these categories, we must consider the argument in light of the entire record.

*Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *see*

*Brown*, 270 S.W.3d at 570 (citing *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App.

1988)).

## B.    Discussion

During the State's closing argument, the following exchange took place:

| State's counsel: | And you heard from many different witnesses.  She [M.B.] didn't have any problem making friends.  She had a lot of friends.  She's not a loner.  She participated in sports, other things.  She talked about how she goes to Southwest High there in Fort Worth now.  She's in AP classes.  AP classes, they're not the mainstream classes.  Good kids are in AP classes.  And one thing I'll say is you never heard one school official get in here—you didn't hear one person from J.T. Stevens, (inaudible) science, McClain, the classical school she went to or Southwest come in here and say, "[M.B.], she's a bad kid.  We have a lot of problems with her." |
|---|---|
| Defense counsel: | Your Honor, we can't do that.  We have a motion in limine about those kind[s] of things.  I object. |
| THE COURT: | Overruled. |

On appeal, Dale argues that the prosecutor's argument was not a reasonable

deduction from the evidence because he was speculating about "what these absent

witnesses would testify."  Dale also contends that M.B.'s credibility in this case was the

paramount issue, and the prosecutor's statement constituted improper bolstering.

First, we note that Dale did not object on the ground of bolstering.  Thus, we do

not find Dale's bolstering argument to be preserved for appeal.  *See* TEX. R. APP. P.

33.1(a); *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998) (explaining that in order

to preserve error, a complainant must make a timely, specific objection and obtain an adverse ruling on the objection from the trial court). Second, we disagree with Dale's contention that the prosecutor's statements were not a reasonable deduction from the evidence. Here, Dale's trial counsel asked repeated questions about M.B.'s living situation, and he impeached her with comments she made on her MySpace page, which indicated that she was often mad about the rules of her grandparents and contained language that some would deem to be vulgar. Dale's trial counsel also made several inquiries about how many times M.B. transferred schools as if to insinuate that M.B. was a troublesome child with an unstable family life. However, no one at trial specifically testified that M.B. was a "bad kid" or that others had "a lot of problems with her." In fact, the testimony revealed that M.B. was in AP classes and generally made good grades.

We find that prosecutor's comment to be a proper summation of the absence of impeaching evidence regarding whether M.B. was a "bad kid." *See Brown*, 270 S.W.3d at 570; *Guidry*, 9 S.W.3d at 154. And, it is noteworthy to mention that Dale concedes that "a prosecutor may comment on the absence of impeaching evidence." *See Adams v. State*, 813 S.W.2d 698, 700 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (noting that, in arguing to the jury, counsel may draw from facts in evidence all inferences that are reasonable, fair, and legitimate, and will be afforded great latitude without limitation in this respect so long as the argument is supported by the evidence and offered in good faith) (citing *Griffin v. State*, 554 S.W.2d 688, 690 (Tex. Crim. App. 1977)); *see also Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000) (holding that the State may comment

on an appellant's failure to present evidence in his favor, as long as the remarks do not fault the defendant for failing to testify). Because we find that the prosecutor's statements about the absence of evidence indicating that M.B. was a "bad kid" to be a proper summation of the evidence, we cannot say that the trial court erred in overruling Dale's objection. *See Brown*, 270 S.W.3d at 570; *Guidry*, 9 S.W.3d at 154; *see also Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988) (noting that a "jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence to constitute reversible error"). Accordingly, we overrule Dale's third issue in appellate cause number 10-11-00380-CR and his second issue in appellate cause number 10-11-00381-CR.

## IV. THE STATE'S OBJECTION TO DEFENSE COUNSEL'S STATEMENTS REGARDING DALE'S DECISION TO NOT TESTIFY

In his fourth issue in appellate cause number 10-11-00380-CR and in his third issue in appellate cause number 10-11-00381-CR, Dale contends that the trial court reversibly erred in sustaining the State's objection regarding his trial counsel's statements during closing argument about his recommendation that Dale not testify. The State counters that the trial court properly sustained the objection as Dale's closing argument ventured outside the record. In the alternative, the State contends that the alleged error, if any, is harmless.

During defense counsel's closing argument, the following exchange took place:

| Defense Counsel: | Let me talk to you about the Court's charge real quick. The Court's charge means the Court's instructions. If you read that, you read it to you. I'm certainly not going to read it again, but there are some |
|---|---|

very important things in here, one of the toughest decisions that a lawyer has to make is whether to give advice to—to his client as to whether or not—what position he feels like the State is in and the case is in, and to determine whether or not to testify or not testify.

And he determined, under his rights under the constitution, that he wouldn't; basically my recommendation.

State's Counsel:    Objection, Your Honor, he's talking about attorney—what he may have said or not said to him.

Defense Counsel:    I'm sorry.

THE COURT:    I'm going to sustain that.

Dale's defense counsel then stated that:

It was determined that there was not [sic] need for him [Dale] to testify . . . . And you folks, either by your silence, when I asked the question, or some of you, specifically when I asked you, said you wouldn't hold that against somebody if they determined; and if they had a lawyer, that they wouldn't testify.

Dale construes the State's objection as pertaining to confidential attorney-client communications, not argument outside the record. Dale argues that "defense counsel was stating what he advised Appellant concerning his right to testify and was not stating anything confidential that his client told him." And because the trial court sustained the State's objection allegedly on the wrong ground, Dale asserts that the error is harmful and warrants reversal.

Assuming without deciding that Dale is correct in arguing that the trial court sustained the State's objection on the wrong ground, we conclude that Dale has not demonstrated that this alleged error had a substantial and injurious effect or influenced

the jury's verdict.[7]  *See* TEX. R. APP. P. 44.2(b) (providing that a non-constitutional error

"that does not affect substantial rights must be disregarded"); *see also Solomon v. State*,

49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (stating that an error does not affect a

substantial right if we have "fair assurance that the error did not influence the jury, or

had but a slight effect"); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)

(same).  We therefore conclude that the error, if any, is harmless.  *See* TEX. R. APP. P.

44.2(b).  Accordingly, Dale's fourth issue in appellate cause number 10-11-00380-CR and

third issue in appellate cause number 10-11-00381-CR are overruled.

### V.    SUFFICIENCY OF THE EVIDENCE SUPPORTING DALE'S CONVICTION FOR AGGRAVATED SEXUAL ASSAULT

In his first issue in appellate cause number 10-11-00380-CR, Dale asserts that the

evidence supporting his conviction for aggravated sexual assault is insufficient.[8]  We

disagree.

### A.    Standard of Review

The Court of Criminal Appeals has expressed our standard of review of a

sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support
> a conviction, a reviewing court must consider all of the evidence in the
> light most favorable to the verdict and determine whether, based on that
> evidence and reasonable inferences therefrom, a rational fact finder could
> have found the essential elements of the crime beyond a reasonable doubt.
> *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9,
> 13 (Tex. Crim. App. 2007).  This "familiar standard gives full play to the

---

[7] Dale acknowledges that the alleged error is non-constitutional error; thus, we analyze the alleged error within the context of Texas Rule of Appellate Procedure 44.2.  *See* TEX. R. APP. P. 44.2.

[8] Dale did not challenge the sufficiency of the evidence supporting his conviction for indecency with a child in appellate cause number 10-11-00381-CR.

> responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under a hypothetically-correct jury charge, the State was required to prove beyond a reasonable doubt that Dale (1) intentionally or knowingly (2) "cause[d] the penetration of the anus or sexual organ of a child by any

means."[9] TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a) (West 2011). "A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). Intent may "be inferred from circumstantial evidence[,] such as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984) (noting that the requisite culpable mental state may be inferred from the surrounding circumstances).

## B.    Applicable Law

Ordinarily, the testimony of a child victim is sufficient to support a conviction for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2005); *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd), *overruled in part on other grounds by Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008); *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.) ("[T]he testimony of a sexual assault victim alone is sufficient evidence of penetration to support a conviction, even if the victim is a child."); *see also Fernandez v. State*, No. 13-09-00168-CR, 2010 Tex. App. LEXIS 6741, at *11 (Tex. App.—Corpus Christi Aug. 19, 2010, no pet.) (mem. op., not designated for publication). Further, courts give wide latitude to the testimony given

---

[9] A "child" is defined as "a person younger than 17 years of age." TEX. PENAL CODE ANN. §§ 22.011(c), 22.021(b)(1) (West 2011 & Supp. 2011).

by child victims of sexual abuse. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). "The victim's description of what happened to [her] need not be precise, and [she] is not expected to express [herself] at the same level of sophistication as an adult." *Ozuna v. State*, 199 S.W.3d 601, 606 (Tex. App.—Corpus Christi 2006, no pet.) (citing *Villalon*, 791 S.W.2d at 134).

## C.      Discussion

Here, M.B. testified that Dale "fingered" or, in other words, penetrated her vagina with his finger on the evening that she, K.I., and several of K.I.'s family members were watching a movie in the converted garage of the lake house. M.B. also testified that she was thirteen years old when the incident transpired and that Dale was married to someone else. This testimony alone would support Dale's conviction for aggravated sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Perez*, 113 S.W.3d at 838; *Karnes*, 873 S.W.2d at 96; *see also Fernandez*, 2010 Tex. App. LEXIS 6741, at *11.

Nevertheless, K.I. testified that she thought that M.B. was lying, and K.I.'s mother and father both testified that they did not see anything out of the ordinary that night. Further, K.I.'s mother stated that she did not believe that her brother, Dale, could have done what was alleged. Despite this testimony, the record indicates that everyone watched the movie at 2 or 3 o'clock in the morning after a long day of swimming, riding jet skis, riding four-wheelers, and roasting marshmallows. In addition, the record contains testimony that several people fell asleep during the movie, though K.I.'s mother insisted that she stayed awake for the entire movie and she saw everything that was going on in the room. In any event, as noted earlier, it is within the province of the

jury to resolve conflicts in the evidence, and we are to defer to the jury's resolution of those conflicts. *See Chambers*, 805 S.W.2d at 461; *see also Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge.").

Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational juror could have concluded that Dale intentionally or knowingly caused the penetration of M.B.'s vagina with his finger and that M.B. was thirteen-year-old child at the time of the incident. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i); *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Hooper*, 214 S.W.3d at 13. Accordingly, we hold that the evidence is sufficient to support Dale's conviction for aggravated sexual assault of a child. *See Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Dale's first issue in appellate cause number 10-11-00380-CR is overruled.

### VI. MODIFICATION OF THE TRIAL COURT'S JUDGMENT IN APPELLATE CAUSE NUMBER 10-11-00381-CR

In appellate cause number 10-11-00381-CR, the trial court's judgment mistakenly references section 22.11 of the penal code, a section of the penal code addressing harassment by a person in a correctional facility and harassment of public servants. *See* TEX. PENAL CODE ANN. § 22.11 (West 2011). However, the judgment specifically notes

that Dale was convicted of indecency with a child in appellate cause number 10-11-00381-CR, and the correct statutory provision for that offense is section 21.11 of the penal code. *See id.* § 21.11. Because we have the necessary data and evidence for reformation, we modify the trial court's judgment to reflect the correct statute for the offense—Texas Penal Code section 21.11. *See id.*; *see also* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

## VII. CONCLUSION

Having overruled all of Dale's issues on appeal, we affirm the judgment of the trial court as modified.


AL SCOGGINS
Justice


Before Chief Justice Gray,
　　　Justice Davis, and
　　　Justice Scoggins
Affirmed as modified
Opinion delivered and filed April 18, 2012
Do not publish
[CR25]