

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00036-CR

**MICHAEL EARL LANE,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the County Court at Law**
**Navarro County, Texas**
**Trial Court No. C34473-CR**

## MEMORANDUM OPINION

In three issues, appellant, Michael Earl Lane, challenges his conviction for aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 22.021(a) (West Supp. 2015). Specifically, appellant contends that: (1) the evidence supporting his conviction is insufficient; (2) the trial court erred in excluding evidence that the victim purportedly exchanged sex for drugs on numerous occasions; and (3) the trial court erred in failing to instruct the jury that it could consider extraneous-offense evidence for only impeachment purposes. Because we overrule all of appellant's issues on appeal, we affirm.

## I. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that the evidence supporting his conviction is insufficient because the victim was unable to identify her attacker, and because the victim failed to rebut his claim of consensual sex on the day of the alleged sexual assault.

### A.    Applicable Law

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in

establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

## B.    Discussion

The State is required to prove beyond a reasonable doubt that the accused is the person who committed the charged crime. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (citing *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Rice v. State*, 801 S.W.2d 16, 17 (Tex. App.—Fort Worth 1990, pet. ref'd)). Identity may be proved by direct or circumstantial evidence. *Id.* (citing *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd); *Creech v. State*, 718 S.W.2d 89, 90 (Tex. App.—El Paso 1986, no pet.)). "In fact, identity may be proven by inferences." *Id.* (citing *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir. 1981)); *see Clark v. State*, 47 S.W.3d 211, 214 (Tex. App.—

Beaumont 2001, no pet.); *see also Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd) (explaining that the jury may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when giving effect to inferences that may reasonably be drawn from evidence).

Officer Stan Eddington of the Corsicana Police Department spoke with K.C., the victim in this case, regarding the incident. He recalled that K.C. had a cut on her thumb and that she stated that she knew the assailant but could not remember his name. She later described the assailant as "approximately 25 to 30 years old, 5'8" to 5'10", ten. I believe she said short hair, black male." She also told Officer Eddington that the assailant was wearing a black shirt and jean shorts on the night of the incident. After further questioning, K.C. informed Officer Eddington that the assailant was the nephew of Paul Moore.

Kenneth Dunagan, a narcotics detective with the Corsicana Police Department, responded to a dispatch to secure a crime scene on the morning of July 21, 2011. Detective Dunagan received details of K.C.'s allegations and a description of the suspect— "Approximately 5'8" to 5'10", skinny, short haircut, black male wearing a black t-shirt, and I believe, blue jean shorts." While investigating the scene, Detective Dunagan observed a blood trail near an air conditioning unit—where the incident allegedly took place. While searching the rear of a building at the scene, Detective Dunagan was approached by appellant and Simpson Thompson. Detective Dunagan recalled that

appellant's appearance matched the description provided by dispatch. Moreover, appellant stated that he is Paul Moore's nephew.[1]

The record also includes K.C.'s statement about the incident, wherein she noted:

I am allowing Detective Clout to write this for me as I tell him. I was walking on East First past the Salvation Army. This guy was walking towards me. I know he is Paul Moore's nephew, but I don't know his name. The guy asked me to walk him back to his house. I didn't see no harm in it, so I did.

When we got in the yard, the guy pulled a knife out of his pocket. The guy said, "You going to give me some." He was standing behind me now and he put the blade up to my chest. I said, "No, I'm not."

He started saying that I was going to do it and he didn't mind going back to prison. He forced me to the back and we walked behind the house and across a little gully. I went through a whole [sic] in a fence that was covered by a piece of plywood.

We went behind a building by an air conditioner. He made me take of [sic] my shorts and underwear down to my ankles and made me get on my hands and knees. I was resisting as much as I could. I was clenching and moving, trying to keep him from getting it in.

He was saying things like, "Bitch, quit playing. I'm going to hurt you if you keep on. We could have been through." He finally got it in. He was trying to grab my arms and I thought he was trying to cut me, so I grabbed at his arms, but I grabbed the blade by accident and cut my thumb open.[2]

Then he started saying, "I ain't got nothing to lose now, Bitch. I ought to take care of my business now." He went ahead and finished and got his nut. He nutted me.

---

[1] Appellant argues that this description is not sufficient because Paul Moore has several nephews, many of whom were present at Moore's house on the evening in question.

[2] When examining K.C. for sexual assault, nurses did not find any physical indications of assault, other than the injury to K.C.'s thumb.

> We got up and he went back through the fence and I heard the dog barking. I got up and pulled my clothes up and walked on feet into First. And when I got past the Salvation Army, I called the police.

K.C. also testified that she could not identify appellant from a photo lineup or in open court as the assailant in this case.

Leslie Johnson, formerly a forensic scientist at the Texas Department of Public Safety crime laboratory in Waco, Texas, testified that she analyzed specimens from both appellant and K.C. and concluded to a reasonable degree of scientific certainty that sperm collected from K.C.'s vagina belonged to appellant.[3] In response to subsequent questioning, Johnson stated that her analysis indicated that appellant was the last person to deposit semen in K.C.

Despite this, appellant directs us to evidence provided by his witnesses. Specifically, Shaffer Lane, appellant's brother, testified that he was with appellant the entire day in question. Simpson Thompson, appellant's uncle, recalled seeing appellant and K.C. hugging and kissing and going into another room. Vassey Lane, appellant's grandmother, remembered that appellant was in and out of her house and Paul Moore's house on the day in question and that she overheard K.C. yelling and cussing at Moore a few days after the alleged incident. Vassey testified that K.C. exclaimed, "I'm going to call the police on you and have the police lock you up or else I'm going to tell them you raped me." Appellant testified that he heard K.C. repeat this threat to Moore while K.C.

---

[3] Johnson also explained that the vaginal swab from K.C. contained an extra allele. Johnson noted that it was impossible to say for certain what constituted the extra allele but that it could be a specimen from an unknown male or unknown female or it could be artificial or stutter. Based on her experience, Johnson believed that the extra matter was stutter. Johnson did not believe that the matter was significant to her analysis, and she explained that forensic scientists frequently find such matter in DNA analysis.

was in Moore's bedroom. Appellant also acknowledged having sex with K.C., but he described the interaction as consensual and taking place in a bedroom. He recalled that K.C. got mad at him after they had sex because he did not have any drugs to give her. On appeal, appellant asserts that K.C. falsely accused him of rape because he did not have any drugs to give her in exchange for sex.

As noted earlier, each fact need not point directly and independently to a defendant's guilt, as long as the cumulative force of all the incriminating circumstances are sufficient to support the conviction. *See Hooper*, 214 S.W.3d at 13. Given the cumulative force of K.C.'s statement identifying her attacker and the circumstances surrounding the attack, Detective Dunagan's testimony that appellant matched the description provided by K.C. of her attacker, and the DNA evidence established appellant as the last person to deposit semen in K.C., it was rational for the jury to infer that appellant was the person who sexually assaulted K.C. on the evening in question. *See id.*

And to the extent that the evidence supports conflicting inferences, especially with regard to identity and whether the sex between appellant and K.C. was consensual, the Court of Criminal Appeals has held that we must presume that the factfinder resolved such conflicts in favor of the prosecution and therefore defer to that determination. *See Clayton v. State*, 235 S.W.3d 772, 778-79 (Tex. Crim. App. 2007); *Chambers*, 805 S.W.2d at 461; *see also Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give due deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an

evaluation of credibility and demeanor, which the jury is in a better position to judge."). With its guilty verdict, the jury clearly believed that appellant sexually assaulted K.C.

Therefore, viewing the evidence in the light most favorable to the verdict, and giving due deference to the jury's determination of witness credibility and the weight of the evidence, we conclude the jury could have found beyond a reasonable doubt that appellant was the person who sexually assaulted K.C. on the evening in question. *See* TEX. PENAL CODE ANN. § 22.021(a); *see also Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We overrule appellant's first issue.

## II.    THE EXCLUSION OF EVIDENCE

In his second issue, appellant asserts that the trial court abused its discretion in excluding evidence detailing the victim's pattern of exchanging sex for drugs. Appellant argues that the evidence is highly relevant to his defense of consent and indicates a motive for the victim to lie.

### A.    Applicable Law

We review a trial court's decision to exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if any evidence supports its decision. *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Generally, Texas Rule of Evidence 412 does not permit reputation or opinion evidence of a complaining witness's past sexual behavior in a criminal trial for sexual assault. *See* TEX. R. EVID. 412. The exceptions are when evidence (1) is necessary to rebut or explain scientific or medical evidence offered by the State, (2) is of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the charged sexual behavior, (3) relates to the motive or bias of the alleged victim, (4) is admissible under Rule 609, pertaining to impeachment by evidence of conviction of a crime, or (5) is constitutionally required to be admitted. *See id.* at R. 412(b)(2)(A)-(E). Even if the evidence falls under one of the five listed exceptions, its probative value must still outweigh the danger of unfair prejudice. *See id.* at R. 412(b)(3); *see also id.* at R. 403.

When a state procedural rule does not satisfactorily permit the defense to attack the credibility of a witness, the rule must give way to the constitutional right. *See Davis v. Alaska*, 415 U.S. 308, 319-20, 94 S. Ct. 1105, 1111-12, 39 L. Ed. 2d 347 (1974). The Constitution, however, does not confer a right in every case to impeach the general credibility of a witness through cross-examination about prior instances of conduct. *See id.* at 321, 94 S. Ct. at 1112-13 (Stewart, J., concurring); *see also Wheeler v. State*, 79 S.W.3d 78, 88 (Tex. App.—Beaumont 2002, no pet.). Nor does the Constitution confer upon a defendant an absolute "right to impeach the general credibility of a witness in any fashion that he chooses." *Hammer*, 296 S.W.3d at 562.

"[A] defendant may always offer evidence of a pertinent trait—such as truthfulness—of any witness." *Id.* at 563. But the witness's general character for

truthfulness may be shown only through reputation or opinion testimony. *See id.*; *see also* TEX. R. EVID. 608(a). "A witness's general character for truthfulness or credibility may not be attacked by cross-examining him (or offering extrinsic evidence) concerning specific prior instances of untruthfulness." *Hammer*, 296 S.W.3d at 563. In fact, the *Hammer* Court stated that: "Prior false allegations of rape do not tend to prove or disprove any of the elements of the charged sexual offense." *Id.* at 564. "If, however, the cross-examiner offers evidence of a prior false accusation of sexual activity for some purpose other than a propensity attack upon the witness's general character for truthfulness, it may well be admissible under our state evidentiary rules." *Id.* at 565.

## B.     Discussion

Prior to taking any testimony, the trial court conducted a Rule 412 hearing. At the hearing, appellant sought to introduce evidence that the victim "is a prostitute. And she trades drugs for sex. And she's been doing that for a long time." Appellant asserted that this evidence demonstrates the victim's motive for bias and revenge because she was allegedly upset with appellant for not providing drugs after they had sex.

In response to appellant's arguments, the State, relying on an opinion from the Dallas Court of Appeals, argued that "witnesses could not testify that the complainant had a history of exchanging sex for drugs in an effort to show that the complainant had a motive to bring rape charges to retaliate for the Defendant's refusal to buy her more cocaine." *See generally Wofford v. State*, 903 S.W.2d 796 (Tex. App.—Dallas 1995, no pet.). The State contended that the facts in the instant case are substantially similar to those in *Wofford*. Accordingly, the State asserted that appellant could not introduce evidence of

specific instances where K.C. exchanged sex for drugs. The trial court allowed appellant to show that K.C. had become angry and threatened rape in the past, but appellant was prohibited from introducing evidence of prior sexual acts. Appellant was also allowed to show that K.C. was angry at Moore; that she was overheard threatening to accuse Moore of rape on more than one occasion; and that Moore had threatened K.C. with a knife earlier in the day because she would not have sex with him.

Here, appellant raised consent as an issue, and in his testimony, he highlighted instances where K.C. got upset because she did not get drugs in exchange for sex. Specifically, appellant explained that K.C. had sex with Moore that day and that she told him, "You're not going to pull that this time." Appellant also noted the following: "Yes, she did. She was—she was explaining that he had messed her over many times before, and he tell her he's going to give her stuff and then later on hesitate on and don't do it, don't follow through with it." Appellant clarified that "stuff" meant "[c]rack or money." Appellant stated that K.C. threatened Moore by telling him that she would claim that she was raped if he did not give her crack. Vassey also confirmed hearing K.C. threaten Moore with a rape allegation if he did not provide her with drugs. Later, appellant testified that K.C. offered to "trick" with him for some drugs. After having sex with K.C., appellant told her that he did not have any drugs. According to appellant, this statement angered K.C.

While defendants are entitled to great latitude to show a witness' bias or motive to falsify testimony, *see Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. [Panel Op.] 1982), the trial court retains wide latitude to impose reasonable limits on cross-

examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1434-35, 89 L. Ed. 2d 674 (1986). The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission. *See Hodge*, 631 S.W.2d at 758. Such risks include "the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing the jury, and the possibility of undue delay or waste of time." *Id.*; *see Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). Though appellant sought to introduce additional evidence of K.C. exchanging sex for drugs to demonstrate motive and bias, such evidence was cumulative of testimony regarding K.C.'s interactions with Moore and appellant that was already in evidence. *See* TEX. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following . . . undue delay, or needlessly presenting cumulative evidence."); *see also Avila v. State*, No. 01-03-00800-CR, 2004 Tex. App. LEXIS 8963, at *7 (Tex. App.—Houston [1st Dist.] Oct. 7, 2004, no pet.) (mem. op., not designated for publication) ("The standard for exclusion of cumulative evidence and harmless error dictates that no harm results when evidence is excluded if other evidence of substantially the same nature is admitted."). The introduction of this evidence would have resulted in, among other things, undue delay or a waste of time. *See Hodge*, 631 S.W.2d at 758; *see also Lopez*, 18 S.W.3d at 222. Therefore, we cannot say that the trial court abused its discretion in excluding additional evidence of K.C. exchanging sex for drugs. *See Martinez*, 327 S.W.3d at 736; *see also De La Paz*, 279 S.W.3d at 344.

Furthermore, we do not believe that the trial court's exclusion of this evidence somehow prevented appellant from presenting a complete defense, especially given that the substance of the evidence appellant sought to introduce was already in evidence. *See Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294, 88 L. Ed. 2d 15 (1985) ("[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, or to whatever extent, the defense might wish."); *see also Hammer v. State*, 296 S.W.3d 555, 562-63 (Tex. Crim. App. 2009) ("[T]he [Supreme] Court did not hold that a defendant has an absolute constitutional right to impeach the general credibility of a witness in any fashion that he chooses. But the constitution is offended if the state evidentiary rule would prohibit him from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory."); *Walker v. State*, 300 S.W.3d 836, 844-45 (Tex. App.—Fort Worth 2009, pet. ref'd).

Moreover, appellant was able to raise all of his defensive theories in his closing argument to the jury and urged them to infer that K.C. was not credible because his evidence showed that she was retaliating against him for failing to provide her with drugs in exchange for sex. *See Johnson v. State*, 449 S.W.3d 240, 246-27 (Tex. App.—Fort Worth 2014, pet. granted) ("Indeed, defense counsel raised all of these grounds in his closing argument to the jury and urged that they indicated H.H. was not credible; thus, he was not prevented from presenting this defensive theory. This admissibility theory does not establish an abuse of discretion." (citing *Hammer*, 296 S.W.3d at 562-63)). Therefore, based on the foregoing, we overrule appellant's second issue.

# III. THE JURY CHARGE

In his third issue, appellant contends that the trial court erred in instructing the jury that it could consider extraneous acts for an improper purpose. Specifically, appellant argues that the trial court erred in instructing the jury that it could consider his prior convictions under Texas Rule of Evidence 404(b), even though they were allegedly only admissible under Texas Rule of Evidence 609 to impeach his credibility. *See* TEX. R. EVID. 404(b), 609.

The record reflects that appellant first introduced his criminal history on direct examination.[4] Apparently, appellant embraced his criminal history as part of his defensive theory. In fact, during closing argument, appellant's counsel specifically mentioned the following:

> I mean, these aren't lily, clean people who've never made a mistake in their life. There people do not live—these folks that we've had up here are not living the same life as us, probably, is my guess. I mean, they're living a life where people hang out in crack houses and people are smoking marijuana and smoking dope all the time. They're living a life where there's casual sex that we would not participate in.
>
> . . . .
>
> And sometimes it's hard to—or sometimes it's easy to think, well, these are all bad people. You know. Who cares if we convict Michael of something bad[?] He's done a bunch of other bad stuff.
>
> Well, that ain't the way this works. We got to separate that stuff out. We can't just say because they've done bad stuff over here, therefore, Michael's guilty of this. Okay? We can't say because these people are

---

[4] The State inquired about appellant's criminal history only after appellant opened the door on direct examination. *See Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (noting that, when a party leaves a false impression with the jury, this opens the door for the opposing party to introduce extraneous-offense evidence to correct the false impression (citing *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005))); *see also Hernandez v. State*, 351 S.W.3d 156, 160 (Tex. App.—Texarkana 2011, pet. ref'd).

around the drug culture and have all this casual sex and prostitution is going on over there that—we can't just say, okay, well therefore Michael is a rapist.

In any event, the record does not reflect that appellant requested a limiting instruction as to this extraneous-offense evidence.[5] The Court of Criminal Appeals has held that, "if a defendant does not request a limiting instruction under Rule 105 at the time that evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge." *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) (citing *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001); *Martin v. State*, 176 S.W.3d 887, 899 (Tex. App.—Fort Worth 2005, no pet.); *Prescott v. State*, 123 S.W.3d 506, 515-16 (Tex. App.—San Antonio 2003, no pet.)). "Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes." *Id.* (citing *Hammock*, 46 S.W.3d at 895; *Rankin v. State*, 974 S.W.2d 707, 712 (Tex. Crim. App. 1996)). Because appellant did not timely request a limiting instruction as to this extraneous-offense evidence, the State was able to use the evidence for any purpose. *See id.*; *Hammock*, 46 S.W.3d at 895; *Rankin*, 974 S.W.2d at 712; *see also Walker v. State*, 300 S.W.3d 836, 849 (Tex. App.—Fort Worth 2009, pet. ref'd) ("If the defendant fails to request a limiting instruction at the introduction of the impeachment evidence, then the defendant does not preserve error and the trial court is not required to provide an instruction; the burden is on the defendant alone to request a limiting instruction."). We therefore cannot say that the trial court erred in failing to include an

---

[5] The jury charge did include an instruction under Texas Rule of Evidence 404(b). *See* TEX. R. EVID. 404(b).

instruction limiting the jury's consideration of the extraneous-offense evidence to credibility. *See Middleton*, 125 S.W.3d at 453; *Almanza*, 686 S.W.2d at 171; *see also Delgado*, 235 S.W.3d at 251; *Walker*, 300 S.W.3d at 849. We overrule appellant's third issue.

## IV.   CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed December 17, 2015
Do not publish
[CRPM]

